## THE PEOPLE, Respondents, *v.* JOHN C. PAGE, Appellant.

Evidence—Rebutting Evidence.—Rebutting evidence is that which is given to explain, repel, counteract, or disprove testimony or facts given in evidence by the adverse party. It is a general rule that anything may be given as rebutting evidence, which is a direct reply to that introduced by the other side.

COUNTERFEIT GOLD DUST—UTTERING OR ATTEMPTING TO UTTER.—The crime of uttering or attempting to utter counterfeit gold dust consists in the possession of a counterfeit or spurious article, knowing it to be such, and passing it, or attempting to pass it, with intent to defraud.

INSTRUCTIONS—INTENT TO DEFRAUD.—It was correct to instruct the jury that if they believed beyond a reasonable doubt that the defendant had, and passed, or attempted to pass, a debased or counterfeit article of gold dust, knowing its spurious character, the conclusion necessarily followed that he intended to defraud.

DEBASING GOLD DUST.—No definite amount or proportion of relative difference in the actual value of genuine gold dust, and that which is counterfeit is required. It is sufficient that it be debased, and that the party uttering it is cognizant of the fact, and passes it for a genuine article.

PRESUMPTION—CRIMINAL LAW.—The general rule in criminal cases is that every person is supposed to contemplate the result, and know the nature of his acts, so that when the acts which constitute the crime are established, the guilt is presumed. Guilty purpose is presumed from the commission of an unlawful or forbidden act.

APPEAL from the second judicial district, Boise county. The following are the instructions given to the jury by the court below:

"In this case, the prosecution must prove, to the satisfaction of the jury, that the defendant had in his possession an article of counterfeit or spurious gold dust; that he had it with intent to pass the same for a genuine article; that, if he tried to pass it on one Stewart, he was aware of its true character; that the attempt or act of passing it, if committed, was made or done in this county and territory. The law presumes, where the facts of the spurious character are established, and the passing or attempt to pass is made out conclusively, that the defendant knew its spurious character; and the passing or attempting to pass is conclusive evidence of the intent to defraud.

"Other evidence of the guilty knowledge and the intent to defraud may also be introduced by the prosecution, by showing that the defendant passed the same quality or any other quality of adulterated or spurious gold dust upon other parties or at other times. Such proof strengthens the conclusion of guilty knowledge in the particular instance when the indictment alleges the offense was committed. It is not necessary the prosecution should prove in addition to the facts that the defendant had the spurious or counter-

feit dust in his possession, and the passing of it, that he knew its real character, by affirmative testimony. It is sufficient proof of his knowledge that it is shown to be a nongenuine article, and that being such he attempted to pass it.

"If the jury believe that he had such an article in his possession and passed it on the prosecuting witness, or attempted to pass it, that it was done in this county and territory, then the case of the prosecution is made out, and on all of these points the defendant is entitled to the benefit of any reasonable doubt which may arise in the minds of the jury as to his guilt. And if the jury is satisfied beyond a reasonable doubt that these facts are true, then the doctrine of reasonable doubt does not apply to any other part of the case. The law then presumes his guilt, unless the defendant establishes his innocence by a preponderance of testimony in his favor. Such is the rule in offenses of this character.

"A man who is a worker in these metals may show that he had the article in question, not to use or pass off as currency, but for some other or innocent purpose. A jeweler may use it in his trade; a chemist may experiment in his profession, and an innocent person may show his innocence of guilt by any proof that shows the jury that his possession of the spurious article and his use of it were for legitimate purposes. But unless he shall show such to be the fact by a preponderance of the testimony, he is not entitled to an acquittal, if the facts I have laid down are first established.

"As to the character of the gold dust in question, the jury must be satisfied that it is not genuine gold dust; that it is not the article which it purports to be. I do not mean by this that it shall be pure gold, but it shall be as pure of other metals as gold dust of like appearance. It should not carry a false face. Any false appearance or false representation of its value, if the said fact is known to the possessor, is evidence of his guilty purpose in passing it, if passed as genuine.

"Representations by the defendant of its being good gold dust need not be in words. It is a false representation of its character if he permits the man to whom he passes it to

take it at a fictitious value, knowing that it is calculated to
deceive him.  And in this case if the jury believe that the
dust in question was offered to the prosecuting witness,
Stewart, to pay debt payable in gold dust, and it was not
equal to what it imported to be, in value, then the defend-
ant must show that he was ignorant of its debased char-
acter.  And it does not matter that it was debased in value
by being mixed with silver unless the defendant show that
he was ignorant of its being so mixed.

"This ignorance would be shown if the defendant could
establish that the dust in question was in its natural con-
dition; that it was taken from the ground in that condition.
This would form a strong presumption of the defendant's
want of knowledge of its base character.  Yet if a party
should undertake to pass for good gold dust an article de-
based by silver, by artificial means, knowing it to be below
the usual standard value of gold of like appearance and
with intent to take advantage of the fact, to defraud the
person to whom he passes it, he would be guilty of the
crime charged in the indictment.  If, therefore, the dust
passed in this case is shown to have been mixed or adulter-
ated with silver by artificial means, it is a fact which the
defendant should explain to the satisfaction of the jury,
showing his innocence, and the absence of such explanation
would leave the guilt of the transaction proven.  The at-
tempt was made to show that the defendant had the tools
and means in his possession to manufacture counterfeit
dust.  Possession of such means is a circumstance to be
considered with his explanation of the use for which he had
them.  If the jury believe that an assay office on a quartz
ledge is not unusual, or that if it was, that it was there
used for honest and legitimate purposes, then that fact is
sufficiently explained.  Of this you may judge.

"The defendant has, by the statute of this territory, a
right to testify in his own behalf, and his explanation of the
transactions referred to in the testimony are to be consid-
ered by the jury, and such credit given to them as they
deem them worthy of.  The interest which a party accused
of crime has in the event is a strong temptation to him to

state such facts only as will exculpate him.    But the credibility of the witness is a question wholly with the jury.  They may believe or reject it as in their opinion the truth requires."

The jury returned a verdict of guilty, whereupon the defendant was sentenced to seven years' imprisonment at hard labor in the territorial prison.    The other facts material to the case appear in the opinion of the court.

*Samuel A. Merritt,* for the appellant, assigned as error the charge of the court to the jury and cited, statutes of 1864, sec. 89, crimes and punishment act; 3. Greenl. Ev., sec. 111, 111 a; 2 Archb. Crim. Pr. and Pl. 917; 1. Greenl., sec. 14, latter part.    Permitting the prosecution to call Koenisberger after the defendant had rested: 2. Bouv. Dict., title Rebutting.

*J. J. May, district attorney for second district,* for the people.

CUMMINS, J., delivered the opinion of the court, MCBRIDE, C. J., and KELLY, J., concurring.

The defendant was indicted under the eighty-ninth section of the act concerning crimes and punishments, for having in his possession counterfeit gold dust with intent to pass the same for the purpose of defrauding one Sam Stewart, knowing such dust to be counterfeit.    A trial and conviction was had, whereupon the defendant moved in arrest of judgment certain objections to the grand jury who found and presented the indictment, which motion being denied, a motion for a new trial was then made, which being also denied, an appeal is brought to this court.

The errors assigned, in the order I will proceed to discuss them, were: 1. In permitting the prosecution to call one Koenisberger as a witness after the defendant had rested his case; and, 2. The instructions of the court to the jury at the trial.

From the bill of exceptions it appears that under the direction of the court, one Cavalli, an assayer, made assays of three distinct parcels of what purported to be gold dust, coming from the hands of the prisoner, one lot passed by

13

him on the prosecuting witness, Sam Stewart, another on one John Clarrisy, and the third found on his person at the time of his arrest, which assays Cavalli reported to the court. A few questions only were asked Cavalli while on the stand, by both the prosecution and the defendant, concerning the assay made of the dust alleged to have been passed by the prisoner on the prosecuting witness, and he was then dismissed. On the next day the defendant called Koenisberger to prove that the assay of the dust passed on the prosecutor, made by Cavalli, was incorrect, this last witness swearing that according to his assay it was worth much more than appeared from the former assay. After the defense was concluded, the prosecution asked leave to call Koenisberger to show that he had made an assay also from each of the other parcels of dust above referred to, for the purpose of rebutting the attempted impeachment of Cavalli's assays, which was allowed. To this defendant excepted and now complains of the same as error, claming that it is not rebutting evidence, and hence was not admissible.

This evidence was rightly received by the court. The defendant called Koenisberger for the purpose of showing that the assays of Cavalli were erroneous. He inquires of the witness as to the one assay alone, made of the parcel of dust passed on the prosecutor. As to these assays they differ widely. Now, it is a very plausible and forcible inference to be drawn from this testimony that the other two assays made by Cavalli are, at least, subject to strong suspicion as to their correctness. And yet no inquiries could be made concerning them on the cross-examination of Koenisberger when first called by the defendant, as that would not have been responsive to the direct examination. Still there is a new character given to the evidence, and given by the defendant, by evidence it was not possible nor necessary for the people to have anticipated. As I have remarked, the testimony of Koenisberger, when first called, was not confined in its effects to the particular assay about which he was interrogated; but it extended with equal force to the other assays made by the same party. Now, rebutting evidence is defined to be that which is given to explain, repel,

counteract or disprove facts given in evidence by the adverse party, and the evidence in this case comes clearly within this definition.

It is a general rule, says an eminent author, that anything may be given as rebutting evidence which is a direct reply to that produced on the other side. It was merely assumed by the counsel for the defendant that the evidence objected to was not rebutting in its character, but original. But this was simply assuming the whole argument, and weighs but lightly when endeavoring to arrive at a just determination of a mooted question. So far as his evidence affected the correctness of the two assays concerning which inquiry was made under objection, it was new and was called out by the adverse party. Hence, the testimony in question was properly admitted at the trial.

The second error assigned, that involving the correctness of the instructions given the jury, presents a question of more difficulty. The rule laid down in the charge goes quite as far as the doctrine of presumptions in criminal cases can safely be carried.

In giving an analysis of the offense charged, the court very properly said that it consisted of the possession of a counterfeit or spurious article of gold dust, the knowing it to be such, and the passing or attempting to pass it with the intent to defraud. The instruction was also undoubtedly correct that if the jury believed beyond a reasonable doubt that the defendant had and passed or attempted to pass a debased or counterfeit article of gold dust knowing its spurious character, the conclusion necessarily follows that he intended to defraud. It is said by Mr. Wharton in his treatise on American criminal law, that on the trial of an indictment for uttering a forged instrument, if the jury are satisfied that the prisoner uttered the instrument as true, meaning it to be taken as such, and that he knew it to be forged, they are bound to infer the intent to defraud. (Sec. 1456.) The intention to defraud is but one of the three principal elements of the crime imputed to the defendant, and it was not said by the court that the proof of certain circumstances was conclusive of the pris-

oner's guilt, as seemed to be the understanding of counsel, but was simply conclusive of his intention to defraud. If it is admitted that the prisoner had a counterfeit article of gold dust in his possession, knowing it to be such, and passed or attempted to pass it as a genuine article, it is impossible to escape the conclusion that he intended to defraud, for that is the inevitable consequence of his act. Hence the language of the court that if the jury found the existence of the enumerated circumstances it was conclusive evidence of this intent; that is, the prisoner could not admit all the other facts, and then be heard in an attempt to rebut the presumption of fraudulent intention alone.

Allusion was also made on the argument to the fact that the genuine gold dust in circulation ranged in value from eight to sixteen dollars per ounce, and that in view of this fact, together with the evidence that one of the assays showed the dust passed on the prosecutor to be worth some eight dollars per ounce, the instructions in relation to what was "counterfeit gold dust" was prejudicial to the prisoner. I think not. No definite amount or proportion of relative difference in the actual value of genuine gold dust as it is found in its natural state and that which is counterfeit, as it is termed by the law, is required. It is sufficient that it be debased, even though it be to a very inconsiderable extent, and that the party uttering it is cognizant of this fact, and passes it for a genuine article, meaning it to be taken as such. If the party receiving be defrauded or might have been had the attempt to utter been successful, the offense is complete, the guilty knowledge being established. And to this extent only do the instructions go on this point. It is the object of the law to prevent the adulteration or alteration of the precious metals taken from our mines and entering largely into the circulating medium with us, by artificial means or agencies for the purpose of passing it for more than its real value, or than it might if left as it was when produced from the mine. Hence, all attempts at giving it an appearance by means of foreign substances, or in any manner changing its natural appear-

ance, or manufacturing wholly or in part from base metals an article to resemble gold dust, as it is commonly denominated, with the intent of passing the same as genuine, as above stated, all these are acts of counterfeiting gold dust.

The last point of objection made to the charge to the jury, urged by the defendant, which it is necessary to examine, is the instruction that it was sufficient evidence of the prisoner's knowledge that the dust was a counterfeit or spurious article, to establish the fact that it was spurious or non-genuine, and that he attempted to or did pass the the same. That is, the prosecution had made out a *prima facie* case, sufficient to put the prisoner on his proof, when these facts were established beyond all reasonable doubt; that on the establishment of these points the fact that he knew it to be such is presumed by the law, and unless this presumption be rebutted or in some manner explained away by the defendant, the jury are warranted in returning a verdict of guilty.

The general rule in the criminal law is that every person is supposed to contemplate the result and know the nature of his acts, so that when the acts which constitute the crime are established, the guilt is presumed. In murder, where the life as well as the liberty of the defendant is in jeopardy, where the homicide is established against the party accused, the malice and guilty purpose are implied. Although the law requires the joint operation of act and intention to constitute guilt, yet the intention is in the most henious offenses which are followed by the most extreme penalties, implied by the act or acts committed.

Guilty purpose is presumed from the establishment of the facts of an unlawful or forbidden act. And this rule is not confined to any particular class of cases. It is the general rule of the criminal law of evidence. It is not even confined to those special statutory crimes which create offenses, and make their existence depend upon the guilty act and knowledge of the person charged.

In Massachusetts in the case of the *Commonwealth* v. *Elwell*, 2 Metc. 190, a defendant was indicted under the statute for the crime of adultery. The offense consisted in unlaw-

ful intercourse with Elizabeth R. Fosburgh, a married woman. There was no allegation of proof that the defendant knew that she was a married woman, and yet the court held that a conviction which was had under this indictment was good, and say that the "reasonable and practicable rule is that if a man shall willfully do an unlawful and criminal act, he must take upon himself all the legal and penal consequences of such act." They further add: "It is true that in the commission of all crimes, a guilty purpose, a criminal will and motive are implied. But in general such bad motive or criminal will and purpose are implied from the criminal act itself. But if a man do an act which would be otherwise criminal, through mistake or accident, or by force, or the compulsion of others, in which his own will and mind do not instigate him to the act, or concur in it, it is matter of defense to be averred and proved on his part, if it does not arise out of the circumstances of the case adduced on the part of the prosecution."

In the same state where, under the statute forbidding the publication of obscene books with intent to corrupt the public morals, a defendant was indicted for that offense without charging him with knowledge, Abbott, J., held that the indictment should have averred the guilty knowledge, but in passing upon the question what was proof of such knowledge, says: "Undoubtedly in general proof that a person sold obscene books would be sufficient *prima facie* evidence of knowledge, and the defendant would be required to overcome it." While he distinctly held that the indictment must contain the allegation of guilty knowledge, he as clearly laid down the rule that it would be established by the obscene publications themselves when produced. (*Vide* 1 Lead. Crim. Cas. 553, note.) An exception to this rule is found in its application to offenses enacted by statute against counterfeiting coin and forging bank notes, and the defendant insists upon extending the exception to the case now before the court.

It is not pretended that there is any precedent on the subject, or that there is any special reason showing that the rule as applied in the court below would be harsh or likely

ever to lead to unjust consequences. But because of some supposed analogy between this and offenses for counterfeiting coin or forging instruments, the exception ought to be applied.

In Ohio where the possession of and secretly keeping instruments for counterfeiting coin or currency is made a felony by statute, the courts hold that the fact of secret possession is proof of guilty knowledge, and requires the party charged to explain and show his innocence. (Ohio Crim. L. 282.)

If a man desires to protect himself against the danger of passing a spurious article of gold dust he can always do so. It is not a lawful tender in discharge of pecuniary obligations. He is neither compelled to receive it nor to pay it out. The facility and certainty of ascertaining its actual value by assay or tests known to business men are everywhere available in this country. But in countries where coin and notes are the currency, any one is liable to be imposed on by a simulated article, with no adequate means of detecting its bad or vicious character. And because an innocent man might pass a counterfeit article of coin or paper currency with no purpose of crime, and to prevent a conviction in such cases, the courts have held that the guilty knowledge should not be inferred, but should be proved by other and additional testimony. The reason for the exception has no application in the passing of spurious dust. He can know by a test whether it is good or bad, and need not remain in ignorance unless willfully and willingly in a case of doubt. And a rule which would release him from the necessity of using such diligence as honesty requires, would be in the interest of crime instead of justice. The commercial wants of the territory do not by any means demand such an article as a circulating currency. And if dealt in as an article of commerce simply, with but little expense and caution, the most unskillful or least experienced need never be imposed upon or cheated.

As an objection to this proposition or rule of law, it was urged by the defendant's counsel that such a rule would convict all or nearly all of the people in the territory. This

assumption may be admitted as a very strong statement of the case, but there certainly is very little argument in it. It may be true that a very large majority of those who have dealt or are dealing in gold dust, or receiving and paying it out as money in their ordinary business occupations, have at some time passed a counterfeit article, but it is equally true that it is very easy for an innocent party to establish his innocence beyond all question.

The ease, facility, and certainty with which the spurious article can be detected, as I have already remarked, when compared to the difficulty of detecting counterfeit coin or forged instruments, requires that innocent dealers, for their own protection against imposition, and in occasional instances, against the necessity of establishing their honesty of purpose in passing it, should at least exercise diligence and caution in receiving gold dust of any character or appearance whatever.

Hence, from as thorough and full an examination of this case as the circumstances and occasion will permit, I am fully persuaded that the instructions of the court below at the trial were correct, and that the rules of law governing cases under this statute, which I may here remark, is peculiar almost alone to our criminal code, was rightly apprehended and given in charge to the jury. The instructions throughout are succinct and lucid, and free from objection on all points upon which they treat.

The judgment, therefore, of the court below is affirmed.