## SMITH v. BETTGER ET AL.

BILL OF EXCHANGE.—*Promissory Note.*—*Law Merchant*—*Payment of Debt.* —*Burden of Proof.* -The taking of a promissory note not governed by the law merchant, by the creditor from his debtor, for an existing debt, is not a payment of the debt, unless it is so agreed to be by the parties, and the onus of proving such agreement would lie upon the debtor; but the taking of a bill of exchange, or a promissory note governed by the law merchant, by the creditor, for an existing debt, is a payment of the debt, unless it is otherwise agreed by the parties, and the onus of proving such agreement would lie upon the creditor, and this rule is the same whether the negotiable paper be executed by the debtor or by some third person.

Smith *v.* Bettger *et al.*

From the Benton Circuit Court.

*B. K. Higginbotham, H. Gaddis, J. Claybaugh,* —— *Thompson,* —— *Thompson* and *J. U. Gorman,* for appellant.

*D. E. Straight* and *U. Z. Wiley,* for appellees.

BIDDLE, J.—Complaint on note and mortgage made by August Bettger to George Smith, and assigned by him to the appellant, for judgment and foreclosure. No question arises upon the complaint.

Appellees answered:

1. General denial;

2. Payment;

3. (The third paragraph is not in the record;)

4. Special payment, as follows:

That on the 13th day of October, 1876, when said note became due, August Bettger made arrangements with Julian Strawn to pay the same when it should be presented, and when the plaintiff was ready to deliver a release of said mortgage, executed by the mortgagee; and that he delivered to plaintiff an order on said Julian Strawn for the money in payment of said note; that the said order was presented by the plaintiff on the 18th day of October, 1876, and accepted by him and paid by giving his draft on Smith, Howell & Co., of Philadelphia, with whom he was doing business, and who at that time, and for several days after, honored his drafts and paid the same; that the plaintiff accepted said draft and delivered up the said release and mortgage, together with the order given by A. Bettger on said Strawn; that, at the time of accepting said draft, the plaintiff might have had the money instead of the draft, if he had demanded the money of said Strawn; that said draft was not immediately forwarded to Smith, Howell & Co. for payment as plaintiff should have done, but on the contrary he withheld the same until the 31st day of October, 1876, at which time Smith, Howell & Co. ceased to honor the drafts of Julian Strawn; that the draft would

have been honored, if it had been forwarded for payment without delay; that, by reason of such delay, the plaintiff failed to get his money, and this was the result of his own negligence. Wherefore," etc.

A demurrer, alleging the insufficiency of the facts stated to constitute a defence, was overruled to the fourth paragraph of answer, and exceptions reserved. Reply of general denial to second and fourth paragraphs of answer. Trial by jury; verdict for appellee, the defendant below, and, over a motion for a new trial, judgment on the verdict.

The appellant has reserved in the record, and presented in his brief, several questions, but we think they all fall within the single question: Is taking a bill of exchange by the creditor from the debtor for a previous debt, *prima facie*, a payment of the debt?

The rulings upon the pleadings and the evidence, and the instructions of the court, are all with the affirmative of this question. This seems to be so regarded by the counsel for the appellant, throughout their learned and forcible brief. We need not, therefore, particularly examine any other question. In reference to the question raised by overruling the demurrer to the fourth paragraph of answer, we think the court did not err. We must hold that paragraph sufficient. And, if taking the bill of exchange, as shown by the evidence on behalf of the defence, was, *prima facie*, a payment of the debt set out in the complaint, then it is plain that no error was committed in reference to the evidence and instructions.

The leading facts, as proved by the evidence on behalf of the defence, may be stated substantially as follows:

The appellee August Bettger lived in the State of Illinois. Some time before the note sued on became due, he left money to pay it with Julian Strawn, at Goodland, in the State of Indiana. The appellant, having been made aware of this fact, sent his brother, Joseph F. Smith, with

the note and a release of the mortgage, to collect the amount of the note, and upon its receipt to deliver. the note and the release to Strawn. Smith carried the note and release to Strawn, and made known his business. Strawn told him that he had not the money convenient, and asked him if he would take a draft payable at Philadelphia. Smith said he would. Whereupon Strawn executed and delivered to Smith the following bill of exchange:

"$642.　　　　　Goodland, Ind., Octo. 20th, 1876.

"At sight pay to the order of Henry L. Smith six hundred and forty-two dollars, value received, and charge the same to account of　　　　　Julian Strawn.

" To Smith, Howell & Co.,

"Philadelphia, Pa.

" No. 354."

There is no. dispute about the amount of the bill of exchange being sufficient to discharge the debt. No agreement was made, and nothing said at the time, as to whether the bill of exchange was to be taken as payment of the debt or not. Joseph F. Smith sent the bill of exchange to the appellee at Rossville, Clinton county, Indiana, who received it there and endorsed it to the " Indiana National Bank," which bank endorsed it to the " Central National Bank." On the 31st of October, 1876, it was presented to the drawee, and protested for non-payment. On the 13th of November, 1876, the appellees were notified of the protest.

This brings us to the question in the case, upon which the authorities do not agree, nor does it seem possible to reconcile them. They are mainly divided into two lines, —the one maintaining the affirmative of the question, that is, that taking a promissory note governed by the law merchant, or a bill of exchange, for a debt, is a payment of the debt; and the other that it is not a payment, and is no.

defence to a suit upon the original debt.   The courts of a majority of the States, we believe, and the courts of the United States, beginning with the case of *Clark* v. *Young,* 1 Cranch, 181, decided in 1803, maintain the negative of the question.   While several other States maintain the affirmative, of which the earliest reported case we have found is that of *Thacher* v. *Dinsmore,* 5 Mass. 299 ; but it was said in that case by Chief Justice PARSONS : "It has long been settled as law in this State, that a negotiable note, given in consideration of a simple  contract debt due, is a discharge of the simple contract.   This was decided before the Revolution, in an action commenced by Warren, administrator of Wheelright."

The line of decisions which takes the negative of the question we are considering seems to have followed the old common-law notion—founded when the law merchant and negotiable public securities had scarcely any existence—that one unexecuted contract can not be pleaded in bar of another unexecuted contract of the same degree, which is doubtless good law yet except as to bills of exchange, promissory notes governed by the law merchant, and negotiable public securities; the opposite line of authorities seems to have accommodated itself to the law merchant and the transfer of negotiable public securities, and holds that acceptance of negotiable paper for a debt is a payment.   It would not be profitable to cite the authorities on both sides, and to cite them upon one side only would be partial, as they would afford but a choice between them at last.   Some of them make a distinction, in receiving negotiable paper, between a previous debt, and a present debt created at the time the paper is taken, holding it to be a payment in the latter instance and not in the former, but we do not clearly perceive any difference in principle between them.   If the debt existed at the time the paper is received in its discharge, it does not seem to us material

whether it was created at the same time or had existed before.

In the midst of this conflict between the decisions of other courts, we must look to our own precedents for authority. By these we are constrained to hold :

1.  That taking a promissory note not governed by the law merchant, by the creditor from his debtor, for an existing debt, is not a payment of the debt, unless it is so agreed to be by the parties, and the onus of proving such agreement would lie upon the debtor.

2.  That taking a bill of exchange, or a promissory note governed by the law merchant, by the creditor from his debtor, for an existing debt, is a payment of the debt, unless it is otherwise agreed by the parties, and the onus of proving such agreement would lie upon the creditor.

We think these rules are better than those which hold the opposite doctrine. They seem to us to be more just. When the debtor gives a promissory note not governed by the law merchant for an existing debt, he can not be subjected to the payment of the debt twice, for the payment of either the original debt or the note is a discharge of both ; but, when the debtor gives a bill of exchange or a promissory note governed by the law merchant, and it should pass into the hands of an innocent holder, he might be compelled to pay it, either as maker or endorser, notwithstanding he had previously paid the creditor the original debt. Under such a rule, unless the negotiable paper was held to be a payment, we do not see why the creditor could not collect his debt twice, once from his endorsee when he negotiated the paper, and once from the debtor on the original debt, and thus subject the debtor to the payment of his debt twice. The only way we see to avoid these consequences would be to compel the creditor at the time of trial, if he sued on the original debt, to produce, deliver up and cancel the negotiable paper received for the debt.

The business of the world is largely carried on by bills of exchange, or other negotiable securities. Bills of exchange are constantly passing from debtor to creditor, discharging debt after debt, and continually receiving additional security by endorsements. If they were not held as payments of the debts for which they were given or transferred, and suits would still lie upon such debts, the parties might be compelled to retrace their steps, and undo all the business transactions they had performed, and thus be continually disturbing the commerce of the world. The creditor has his remedy on the bill of exchange, or other negotiable security, which he takes for his debt, and it seems to us it should be his only remedy. It is at his option to keep his debt or take the bill of exchange, or other negotiable security, for it, and he should choose between them, and not be allowed to hold them both. And we think this view is more in accordance with the custom of merchants, and better serves the great interests of civilization than would the opposite practice. When the manufacturer sells his commodities to the merchant, to be shipped to a distant region, or perhaps to another country, and takes a bill of exchange from the merchant, either as maker or endorser, for his goods, he does not rely upon the original debt, but upon the bill of exchange with which he discharges his debt to the producer, who may perhaps live in another country. Thus the bill of exchange passes around the world, constantly performing its office between debtor and creditor, until it is cancelled by payment at the counter of the drawee, and the debts which it has answered are extinguished forever. If, throughout this course, and during this time, each party to the bill, who is necessarily and alternately creditor and debtor, should be bound for his original indebtedness, and also upon the bill of exchange, either as maker or endorser, it would very much embarrass commercial relations, and

render the rights of debtors and creditors extremely insecure.

The first decision we have in our reports touching the question under consideration is the case of *Pitzer* v. *Harmon*, 8 Blackf. 112, wherein it was held that the discharge of a promissory note by a surety by giving his own note, not negotiable by the law merchant, and which he has not paid, does not authorize him to sue his principal for money paid to his use. The same principle was held in *Bennett* v. *Buchanan*, 3 Ind. 47. The same in *Judah* v. *Potter*, 18 Ind. 224. See, also, *Romine* v. *Romine*, 59 Ind. 346. These cases strongly imply that if the note so taken for the debt was governed by the law merchant, it would amount to a payment.

The following cases hold that a promissory note taken upon a debt, with the agreement of the parties that it shall be received as payment, will amount to a payment of the debt. *Tyner* v. *Stoops*, 11 Ind. 22; *Stevens* v. *Anderson*, 30 Ind. 391; *Maxwell* v. *Day*, 45 Ind. 509; *White* v. *Miller*, 47 Ind. 385.

The case of *White* v. *Carlton*, 52 Ind. 371, holds that "The satisfaction of a debt by a surety by giving his own note, governed by the law merchant, to the creditor, is such a payment as will authorize such surety to sue a cosurety for contribution." In the case of *Alford* v. *Baker*, 53 Ind. 279, it was held that "The giving of a promissory note governed by the law merchant for a pre-existing indebtedness of the maker to the payee will discharge the debt, unless it is shown that the parties did not intend it to have that effect; but the giving of a promissory note not governed by the law merchant for such a debt does not operate as a payment thereof, unless it be so expressly stipulated between the parties." This case is followed by the following cases: *Hill* v. *Sleeper*, 58 Ind. 221, and *The Bristol Manufacturing, etc., Co.* v. *Probasco*, 64 Ind. 406.

In the following cases it is held that "Where a builder executes to the material man a promissory note payable in bank, for a balance due for materials furnished, such a note will operate as a *prima facie* payment of the account." *Hill* v. *Sloan*, 59 Ind. 181 ; *Schneider* v. *Kolthoff*, 59 Ind. 568.

With these authorities before us, we must hold to the affirmative of the question under consideration ; nor, as at present advised, would we adopt the opposite rule if the question was still open.

The judgment is affirmed, at the costs of the appellant.

## On petition for a rehearing.

BIDDLE, J.—The counsel for appellant have filed a long and ardent brief to convince us of two propositions :

. 1.   That negotiable paper taken in payment of a debt does not discharge the debt unless the paper is made by the debtor ; and,

2.   That, unless the debt is upon simple contract, taking negotiable paper will not discharge the debt at all.

The learned counsel have not furnished either text or case in support of the first proposition. They have cited several cases wherein it was held that a negotiable note made by the debtor and received by the creditor was a payment of the debt ; but they have furnished us with no case wherein it was held that the debtor and the maker of the negotiable paper must be the same person, or the debt will not be discharged. A single bill of exchange, after it has been endorsed by the payee, and thus made negotiable by delivery, will pay debt after debt, to any number, before it falls due, either by additional endorsements or by passing it from hand to hand, long after the parties have lost all knowledge of the maker and his debt, except his name to the bill. Bills of exchange are often made where no debt exists between the maker and the payee ; often made, indeed, expressly to pay the debt of

the payee to a third person, and not the debt of the maker to the payee. Such bills, when once made negotiable by delivery, and put in circulation, will pay just as many debts as there are debtors who pass them, and creditors who receive them, before they are due. These are the qualities of bills of exchange, which give them their peculiar character and their great usefulness in the commerce of the world. The rule contended for by the counsel would effectually put a stop to the use of commercial paper, except as between original debtors and original creditors who made and received the paper; indeed, it would rob it of every quality which constitutes it commercial paper.

As to the second proposition, that the debt paid by a bill of exchange must be a simple contract, or it will not be discharged: The plainest, and therefore the best, definition of simple contracts that we know of is given by Mr. Addison, as follows :

" Parol or simple contracts are contracts which are either made by word of mouth, or are inferred from the silent language of men's conduct and actions, or are put into writing and signed by the parties to them, but are not sealed and delivered, and can not be enforced unless they are founded upon some good or valuable consideration." 1 Addison Con., sec. 2.

Any of the text-books will give substantially the same definition of simple contracts.

Promissory notes and bills of exchange are simple contracts, and differ in nothing from oral contracts, except that the words are fixed by writing, and can by that means be passed all over the world, and be easily proved. A promissory note secured by a mortgage on real estate does not cease to be a simple contract; the note is the debt, not the mortgage; and the payment of the note effectually discharges the mortgage. Any kind of a debt

may be paid by a bill of exchange made by any person, whenever the debtor delivers it, if negotiable, or, if not, endorses it to the creditor, before it is due, and the debt will thereby be discharged. The statute expressly enacts that "An agreement in writing, without a seal, for the compromise or settlement of a debt, is as obligatory as if a seal were affixed." Sec. 273 of the Code.

The petition is overruled.