STATE OF INDIANA, EX REL. J. B. SPEED AND COMPANY *v.* TRAYLOR ET AL.

[No. 10,693. Filed October 26, 1921. Rehearing denied January 26, 1922.]

1. PRINCIPAL AND SURETY.—*Release of Sureties by Extension of Time and Novation.—Pleading.*—Release of sureties on promissory notes by reason of an extension of time and novation must be pleaded specially to be available as a defense. p. 423.

2. SALES.—*Purchaser.—Evidence.*—In an action to recover the selling price of a quantity of stone, evidence *held* to show that the stone was sold to a partnership, and not to a corporation in which the partners were stockholders. p. 423.

3. PAYMENT.—*Acceptance of Promissory Note.—Presumptions.* —The giving of a promissory note, governed by the law merchant, is *prima facie* evidence of payment, which is conclusive in the absence of evidence that the parties did not so intend, but such presumption is rebutted if the evidence shows an agreement that such note was not to be taken in payment, or if the effect of such presumption would be to deprive the party who takes the note of a collateral security or any other substantial benefit. p. 424.

4. PAYMENT.—*Partnership Debts.—Acceptance of Corporation Note.—Discharge of Debt.*—Where the debt for which notes of a corporation were taken was the debt of a partnership, and not of the corporation, although it was organized, and its stock held, by the members of the partnership, the taking of the notes, in the absence of an agreement, by the parties that they were to be accepted as payment, did not discharge the debt, since the taking of a promissory note of a third person for a pre-existing debt is not a discharge of the debt, unless such is the express agreement. p. 425.

From Vanderburgh Superior Court; *Robert J. Trace-well,* Judge.

Action by the State of Indiana, on the relation of J. B. Speed and Company, against Edgar Traylor and others. From a judgment for defendants, the relator appeals. *Reversed.*

*James T. Walker, Henry B. Walker* and *Lawrence G. Poston,* for appellant.

*Albert W. Funkhouser, Arthur F. Funkhouser, Simon L. Vandeveer* and *Robert D. Markel,* for appellees.

McMAHAN, J.—Action by the State of Indiana, on relation of J. B. Speed and Company, hereinafter designated appellant, to recover on a contractor's bond given to the commissioners of Dubois county, conditioned that appellees Edgar Traylor and Andrew B. Krempp then partners doing business under the name of Traylor and Krempp should perform their contract with said commissioners for the building of a certain system of roads in said county known as the Ferdinand Township Rock roads and that they would pay all debts incurred by them in the prosecution of said work including materials furnished for that purpose.

The complaint alleges that appellant furnished material to said contractors for the construction of said roads and that there was a balance of $2,744.04 due appellant. Appellees answered general denial and payment. From a judgment in favor of appellees appellant appeals and assigns as error the action of the court in overruling its motion for a new trial.

The facts as disclosed by the evidence insofar as they are material are in substance as follows: Edgar Traylor and Andrew B. Krempp as partners doing business under the name of Traylor and Krempp were, in August, 1916, awarded a contract by the commissioners of Dubois county for the construction of a certain system of rock roads and executed and delivered to said commissioner the bond sued on, which was signed by appel-

lees and accepted and approved by said commissioners. Appellants shipped to Traylor and Krempp for use in and which was used in the construction of said roads crushed stone of the value of $4,390.63. In January, 1917, a corporation known as Traylor and Krempp Company was organized and took over the assets of said partnership and assumed its liabilities, although the evidence fails to show that the contract for the construction of this road was assigned to the corporation or that the county commissioners had any notice or knowledge that the assets of the partnership had been turned over to the corporation or that it had assumed the liabilities of the partnership. The evidence also fails to show anything relative to the amount of the capital stock of the corporation, whether it was paid up, or who the stockholders were, although it is sufficient to show that Edgar Traylor, Bomar Traylor and Andrew B. Krempp were stockholders, and that Krempp sold his stock to Edgar Traylor. Traylor and Krempp as partners had contracts for the construction of other roads, had been doing business as contractors for several years during which time they had purchased stone from appellant for use in their road work and also for sale. About a week after the contract for the Ferdinand roads was awarded Traylor and Krempp, they entered into a written contract with appellant wherein appellant agreed to furnish the stone needed for the construction at a fixed price per ton, said contractors agreeing not to sell or offer any of said stone for sale to any other parties. All the stone used in the construction of said road was consigned and charged to Traylor and Krempp. None of it was shipped to or charged to the corporation. The total value of the stone shipped to Traylor and Krempp under this contract, and used in the construction of said roads is $4,390.63. The value of that shipped before the incorporation is $196.06. The value

of that shipped after the incorporation of said company is $4,194.57. This stone was all consigned to "Traylor and Krempp" and, according to the testimony of Mr. Traylor, was delivered to them. All letters from appellant in relation to such shipments, the account and the notes were addressed to Traylor and Krempp with three exceptions, one of which was when a letter signed by Traylor and Krempp Company was handed to a stenographer for attention and she without any direction addressed the answering letter to the corporation. No note of the partnership was at any time given to appellant for any part of the stone purchased after February 19, 1917. All of the notes after that time were notes of the corporation or of the corporation and Edgar Traylor. There is a balance of $2,744.04 plus interest due and owing appellant for the stone so shipped and used on this road. It was the custom of appellant both before and after the incorporation, when the open account had been due for some time to accept notes payable in a bank in this state and credit the amount of such notes on the open account. On February 19, 1917, a month after the company was incorporated there was a balance of $4,266.62 due appellant, $196.06 of which was for stone shipped to Traylor and Krempp and used on the Ferdinand roads. On this day a note for $4,000 dated December 15, 1916, payable on or before April 15, 1917, at a bank in this state, signed "Traylor and Krempp. By Edgar Traylor, Edgar Traylor," and a check for $266.62 were delivered to appellant and credited on the account. In April, Traylor and Krempp Company sent appellant a check for $2,000, and two $1,000 notes negotiable under the statute. A few days later the interest on said $4,000 note was paid and the note canceled and mailed to the company. Appellant continued from time to time to ship stone to Traylor and Krempp, and Traylor and Krempp Company would from

time to time send its checks and notes which would be credited on the open account. December 18, 1917, the amount due appellant had increased to $13,309.86 on which day three negotiable notes aggregating $11,000 all signed "Traylor and Kremp Co. By Edgar Traylor Secy., Edgar Traylor." The two $1,000 notes of April 30, 1917, were later taken up by a negotiable note for $2,000 which was also signed by the incorporation and Edgar Traylor. When checks were received by appellant it applied them to the payment of the oldest items of indebtedness. When this action was commenced there was owing appellant on account of stone shipped to Traylor and Krempp, a large amount for stone shipped to them and not used on the Ferdinand road and not involved in this action.

Appellant's main contention is that the decision is not sustained by the evidence and is contrary to law, while the main contention of appellees is that the stone was sold to the corporation instead of to the partnership and that it was paid for by the negotiable promissory notes of the corporation. They also contend that appellant without their consent extended the time for the payment of the debt and agreed to accept and did accept the notes and agreement of the corporation whereby the corporation became liable to appellant for the amount of the indebtedness.

Release of sureties by reason of an extension of time and novation, in order to be a defense, must be pleaded specially. *Crum* v. *Yundt* (1895), 12 Ind. App. 1, 2. 308, 40 N. E. 79; *Stringer* v. *Breen* (1893), 7 Ind. App. 557, 34 N. E. 1015. The stone in question was all shipped to the partnership, and charged to it in accordance with the written contract and there is no evidence of any assignment of the contract to the corporation or of any express agreement on the part of appellant to accept the obligation of the corporation in

payment for the stone. The contract price for doing the work appears to have been paid by the county to the partnership and not to the corporation, and in February after the corporation was incorporated we find the partnership giving its note to appellant for $4,000, although after that date the notes and checks given appellant were all signed by the corporation. The orders for the various shipments of stone appear to have been given by telephone and the stone was all consigned and charged to the partnership and received by it. A finding that the stone was sold to the corporation would not be sustained by the evidence and would be contrary to the law when applied to the evidence.

The only other question which we need consider is the effect of appellant's acceptance of the notes of the corporation. It is the law of this state that the giving of a promissory note, governed by the law merchant, is *prima facie* evidence of payment, which must be accepted as conclusive in the absence of any evidence that such was not the intention of the parties. Such presumption however is overcome and rebutted if the evidence shows that there was an agreement that such note was not to be taken in payment, or if the effect of such presumption would be to deprive the party who takes the note of a collateral security or any other substantial benefit. *Bradway* v. *Groenendyke* (1899), 153 Ind. 508, 55 N. E. 434; *Kelley* v. *York* (1915), 183 Ind. 628, 109 N. E. 772; *Jouchert* v. *Johnson* (1886), 108 Ind. 436, 9 N. E. 413; *Essig* v. *Porter* (1916), 63 Ind. App. 318, 112 N. E. 1005; *Beach* v. *Huntsman* (1908), 42 Ind. App. 205, 85 N. E. 523. This court in *Essig* v. *Porter, supra,* held that the taking of a negotiable note did not operate as a waiver of a vendor's lien previously held by the appellee, and quoting from *Jouchert* v. *Johnson, supra,* said: " 'The presumption of payment, which ordinarily arises from the giving of

State, ex rel. *v.* Traylor—77 Ind. App. 419.

a note governed by the law merchant, will be controlled when its effect would be to deprive the party who takes the note of a collateral security, or any other substantial benefit. In such cases the presumption of payment is rebutted by the circumstances of the transaction itself.' "

In *Teal* v. *Spangler* (1880), 72 Ind. 380, cited by appellees, the court quotes from *Smith* v. *Bettger* (1879), 68 Ind. 254, 34 Am. Rep. 256, where it is said:

4.  " 'That taking a bill of exchange, of a promissory note governed by the law merchant, by the creditor from his debtor, for an existing debt, is a payment of the debt, unless it is otherwise agreed by the parties, and the onus of proving such agreement would lie upon the creditor,' " and after citing *Maxwell* v. *Day* (1874), 45 Ind. 509, in support of the same proposition, it was held, that the doctrine so stated must be regarded as the settled law of this state. But these and other cases so holding were in effect overruled in *Jouchert* v. *Johnson, supra*, where it is said: "That the giving of a note, governed by the law merchant, either by the debtor or by a third person, is presumptively an extinguishment of an antecedent debt, is thoroughly settled. This principle can have little, if any, application to a case where the debt and the securities given for its repayment arise out of one and the same contemporaneous transaction. In such a case, the whole transaction gives character to each separate part, and if one substantial part of the transaction would be nullified by attaching certain presumptions to another part of the same transaction, such presumptions will not be indulged. The transaction is to be inspected in all its parts, and the intent of the parties, as discovered from all circumstances, is to control in its interpretation. Thus it is uniformly held, that the presumption of payment, which ordinarily arises from the giving of a note governed by the law merchant, will be controlled when its effect would be to deprive the

party who takes the note of a collateral security, or any other substantial benefit. In such cases the presumption of payment is rebutted by the circumstances of the transaction itself." In *Scott* v. *Edgar* (1901), 60 N. E. 468, which was an action to enforce a vendor's lien, this court, following *Smith* v. *Bettger, supra,* held that the giving and acceptance of a note governed by the law merchant operated as a payment of the debt and extinguishment of a vendor's lien in the absence of "an agreement to the contrary." But the cause was transferred to the Supreme Court where it was held that the acceptance of the note created no presumption of payment because the effect thereof, if allowed, would deprive the vendor of his lien. *Scott* v. *Edgar* (1902), 159 Ind. 38, 63 N. E. 452. To the same effect see *Bradway* v. *Groenendyke, supra; Kelley* v. *York, supra; Essig* v. *Porter, supra; Beach* v. *Huntsman, supra.* In the case last cited the court on page 209 says: "If the presumption of payment deprives the party accepting the note of a collateral security, or some other substantial benefit, such circumstance rebuts the presumption." *Mason* v. *Douglas* (1893), 6 Ind. App. 558, 33 N. E. 1009, cited by appellees, is based upon *Teal* v. *Spangler, supra,* and *Smith* v. *Bettger, supra,* and no longer expresses the law upon the question now under consideration. Whenever it appears that the creditor had other and better security than such note for the payment of his debt, it will not be presumed that he intended to abandon such security. *Kidder* v. *Knox* (1860), 48 Me. 551. In such cases the legal presumption of payment is controlled and rebutted as a matter of law. The presumption is explained, repelled, counteracted, and overcome and is no longer of any controlling influence. *Fain* v. *Cornett, Admx.* (1858), 25 Ga. 184; *People* v. *Page* (1868), 1 Idaho 189; *Davis* v. *Hamblin* (1879), 51 Md. 525; *Kelly* v. *People* (1907), 229 Ill. 81, 82 N. E. 198,

12 L. R. A. (N. S.) 1169, 11 Ann. Cas. 226. "The general doctrine is, that the taking of a note is to be regarded as payment only when the security of the creditor is not thereby impaired." *Paine* v. *Dwinel* (1865), 53 Me. 52, 87 Am. Dec. 533; *Bunker* v. *Barron* (1887), 79 Me. 62, 8 Atl. 253, 1 Am. St. 282. The debt for which the several notes were given was the debt of the partnership and not the debt of the corporation and the law of this state is that the taking of a promissory note from one of several joint debtors, or the note of a third person, for a pre-existing debt, is not a discharge of the debt, unless such is the express agreement. *Tyner* v. *Stoops* (1858), 11 Ind. 22, 71 Am. Dec. 341; *Jewett* v. *Pleak* (1873), 43 Ind. 368; *Huff* v. *Cole* (1873), 45 Ind. 300; *Bristol Milling, etc., Co.* v. *Probasco* (1878), 64 Ind. 406; *Godfrey* v. *Crisler* (1889), 121 Ind. 203, 22 N. E. 999; *Dick* v. *Flanagan, Admr.* (1890), 122 Ind. 277, 23 N. E. 765, 7 L. R. A. 590; *Zimmerman* v. *Adee* (1890), 126 Ind. 15, 25 N. E. 828; *Mount* v. *Dehaven* (1902), 29 Ind. App. 127, 63 N. E. 330. There is no evidence of any agreement that the notes of the corporation were to be accepted as payment.

It follows from what we have said that the finding of the court is not sustained by the evidence, and is contrary to the law when applied to the facts.

Judgment reversed with directions to grant a new trial and for further proceedings not inconsistent with this opinion.