## STATE, EX REL. STANDARD OIL COMPANY OF INDIANA
## *v.* HULLIHAN ET AL.

[No. 12,911. Filed June 29, 1927. Rehearing denied January 25, 1928. Transfer denied January 8, 1931.]

*James H. State* and *James L. Harman,* for appellant. *D. F. Brooks,* for appellees.

THOMPSON, C. J.—Appellant brought this action against appellees to recover on surety bonds for oil and

materials furnished in the construction of three high-
ways. There was a trial by the court, and a special
finding of facts, on which the court rendered judgment
in favor of appellees. Appellant's motion for a new
trial was overruled, to which ruling an exception was
taken.

The facts as found by the court are, in substance, as
follows: In July and September, 1923, appellee F. T.
Hullihan and Company was awarded three contracts
for the building of three separate highways in Hunting-
ton County, viz.: One in Huntington Township known
as the "Clifford Fundenburg Highway," for $27,700;
one in Warren and Dallas Townships known as the
"Charles Urschel, et al. Highway," for $12,600; and one
in Clear Creek and Huntington Townships known as the
"Melvin A. Zent, et al. Highway," for $21,850; that the
bid for each of said contracts was accompanied by a bond
executed by said F. T. Hullihan and Company as princi-
pal, and by appellee Fidelity and Deposit Company of
Maryland as surety thereon, conditioned for the faithful
performance of said contracts, and said bonds were ac-
cepted and approved by the board of commissioners of
Huntington County; that, thereafter, in 1924, said ap-
pellee F. T. Hullihan and Company sublet the construc-
tion of said highways to C. B. Huffman and Company;
that C. B. Huffman and Company completed all of
said highways, which were accepted as completed pursu-
ant to said contracts by said board of commissioners of
Huntington County; that, in August, September, Octo-
ber and November, 1924, appellant sold and delivered to
C. B. Huffman and Company gasoline and oil as alleged
in the first paragraph of complaint, of the value of
$728.25, and that said gasoline and oil were used and
consumed in hauling gravel and material with motor
trucks in improving and constructing the Clifford Fun-
denburg Highway; that, in November, 1924, appellant

sold and delivered to C. B. Huffman and Company, gasoline and oil as alleged in the second paragraph of complaint, of the value of $88.18, and that the same was used by C. B. Huffman and Company in hauling gravel and material with motor trucks used by them in the construction of the Melvin A. Zent Highway; that, in the months of September and November, 1924, appellant sold and delivered to C. B. Huffman and Company, as alleged in the third paragraph of complaint, gasoline and oil of the value of $312.82, and that said gasoline and oil were used by them in the construction of the Charles Urschel Highway; that, on November 15, 1924, C. B. Huffman and Company was indebted to appellant in the aggregate sum of $1,124.76 for gasoline and oils used in the construction of the three highways, and that said amount was due and unpaid; that, on said day, C. B. Huffman, a partner of the firm of C. B. Huffman and Company, Roy Wertenberger, a partner of the firm of F. T. Hullihan and Company, and Arthur H. Tyler, credit manager of appellant, met at the court house in Huntington, and it was then and there ascertained that C. B. Huffman and Company was further indebted to appellant in the sum of $200.20 for materials sold and used in the improvement of a highway in DeKalb County, Indiana, making a total indebtedness assumed to be due appellant from C. B. Huffman and Company of $1,329.45, and it was then and there agreed, by and between said C. B. Huffman and Company, F. T. Hullihan and Company, and Arthur H. Tyler, that said C. B. Huffman and Company would execute its promissory note to F. T. Hullihan and Company for said sum of $1,329.45, and that F. T. Hullihan and Company would indorse said note; that, pursuant to said agreement, a note was executed by C. B. Huffman and Company to F. T. Hullihan and Company, on November 15, 1924, for $1,329.45, due 30 days after date, at the First Nation-

al Bank of Huntington, Indiana, drawing 7 per cent interest per annum, and providing for attorney fees; that, on said date, C. B. Huffman and Company executed a chattel mortgage to said F. T. Hullihan and Company to secure the payment of said note, on certain personal property therein described, subject to the mortgage claim of the Foote Concrete Machinery Company of $705 and also subject to a mortgage of $2,400 held by Eli P. Miller, et al. and said mortgage contained a provision that said C. B. Huffman and Company should retain possession and have the use of said property until said note thereby secured became due; that said mortgage was recorded on November 17, 1924, in Huntington County; that, on November 16, 1924, said Arthur H. Tyler went to Wabash, Indiana, and delivered said note to Roy Wertenberger for the purpose of procuring the indorsement of said F. T. Hullihan and Company, and said F. T. Hullihan and Company indorsed said note "Hullihan & Company, by Roy Wertenberger, without recourse," and assigned said mortgage to appellant without recourse; that said note and mortgage were delivered to Arthur H. Tyler by Roy Wertenberger, and said Tyler had said mortgage recorded in Huntington County; that said Tyler took said note to appellant's office at South Bend, Indiana, and from there it was forwarded to appellant's principal office at Chicago, Illinois; that said note was tendered to F. T. Hullihan and Company, and refused, and remained in the possession of appellant until May 12, 1926, when it was brought into court; that said note was tendered back to C. B. Huffman and Company; that appellant accepted said note in payment of the account upon which this action is predicated; that C. B. Huffman and Company was adjudged bankrupt in the spring of 1925.

The principal question to be determined in this case

is whether or not the acceptance of a note governed by the law merchant, such as the note here involved, secured by a chattel mortgage, and under the circumstances as found by the court, was intended as an acceptance as payment or merely as a memorandum of the debt.

The law is well settled in this state that where a non-negotiable note is given, the burden rests upon the maker to prove that said note was given as payment of a debt, but when the note given is negotiable, under the law merchant, and under our negotiable instruments act, the presumption is that it was given and accepted as payment of the debt represented thereby. See *Bradway* v. *Groenendyke* (1899), 153 Ind. 508, 55 N. E. 434; *Smith* v. *Bettger* (1879), 68 Ind. 254, 34 Am. Rep. 256; *Keller* v. *Boatman* (1874), 49 Ind. 104; *White* v. *Carlton* (1876), 52 Ind. 371; *Schneider* v. *Kolthoff* (1877), 59 Ind. 568; *Teal* v. *Spangler* (1880), 72 Ind. 380; *Mason* v. *Douglas* (1892), 6 Ind. App. 558, 33 N. E. 1009; *Keck* v. *State, ex rel.* (1895), 12 Ind. App. 119, 39 N. E. 899; *Davis, etc., Co.* v. *Vice* (1895), 15 Ind. App. 117, 43 N. E. 889.

It is the law, also, that if the presumption of payment deprives the party accepting the note of a collateral security or some other substantial benefit, such circumstances rebut the presumption. See *State, ex rel.*, v. *Traylor* (1921), 77 Ind. App. 419, 132 N. E. 608.

In the case at bar, the court found that appellant accepted the note as payment of the debt. In addition to the witnesses who testified as to the execution of the note and chattel mortgage and the circumstances under which they were given, the court, no doubt, considered the fact that the note in question covered an indebtedness of $200.20 which had no connection with this case and which the bonds sued on in this action did not secure. There is evidence to sustain

the facts as found by the court, and there was no error in the court's conclusions of law.

Appellant complains of the action of the court in sustaining an objection to the following question propounded to Arthur H. Tyler, witness for appellant: "Now, in accepting this note, the note referred to, and the mortgage, for what purpose did you accept it?" There was no error in sustaining the objection to this question, as the intention of the witness should be determined from what was said and done at the time of the execution of the note, and the circumstances surrounding the same, rather than from what the witness might say as to why he did it.

There was no error in overruling the motion for a new trial.

Affirmed.