## SAMUEL BUNKER *vs.* J. FRANK BARRON.

### Somerset.    February 3, 1887.

*Deeds. Mortgages. Promissory notes. Payment. Presumption.*

A deed, absolute upon its face, together with an instrument of defeasance under seal executed at the same time, as part of the same transaction, between the same parties, constitutes a mortgage.

It is a well settled rule of law in this state that a negotiable note, given for a simple contract debt, is *prima facie* to be deemed a payment or satisfaction of such debt.

This presumption relates to the intention of the parties and may be rebutted and controlled by evidence that such was not their intention.

Such presumption may be rebutted by proof of facts or circumstances under which the negotiable paper was received, showing that it was not intended to operate as payment.

As a general rule, and in the absence of any express agreement, this presumption will be overcome where it would deprive the creditor taking the note of the substantial benefit of some security, such as a mortgage, guaranty or the like.

Nothing but payment of the debt, or its release will discharge a mortgage.

ON report.

Writ of entry. The facts are stated in the opinion.

*J. J. Parlin*, for plaintiff.

The note of February 1, 1875, was payment of all demands Paine held against William Quint and of all other indebtedness to Paine from either of the Quints, because it is negotiable and therefore presumed to be in payment of what it was given for. 2 Parsons on Notes and Bills, 150, note a. Parsons on Contracts, 8th ed. vol. 2, p. 776. This is the law in Massachusetts, Maine and Vermont.

C. J. APPLETON says on page 165, Maine Rep. Vol. 56, "By the law of Massachusetts and of Maine, the giving a negotiable note or draft is to be deemed *prima facie* evidence of payment. " In *Thacher* v. *Densmore*, 5 Mass. 299, and in *Whitcomb* v. *Williams*, 4 Pick. 228, it is held to be an absolute payment and discharge of the debt. Nothing is shown to rebut the presump-

tion of law that it, the note dated February 1, 1875, was given in payment.

The payment by Quint to Paine was by one whose duty it was to pay the Bunker note and mortgage, and the release or giving a new bond by Paine to him will be held to operate as a discharge. 100 Mass. 131. I refer to the case of *Wadsworth* v. *Williams and others*. Also *Gibson* v. *Crehore*, 3 Pick. 475, and *Brown* v. *Lapham*, 3 Cush. 552.

The deed and bonds back unquestionably constitute mortgages. None of the authorities cited by defendants have any tendency to show the contrary. The case of *Bayley* v. *Bailey*, 5 Gray, 509, decides the bond then in question to be a mortgage, and decides nothing further. *Harrison* v. *Phillips Academy*, 12 Mass. 465, contains nothing in point. In *Bodwell* v. *Webster*, 13 Pickering, 415, and especially in *Flagg* v. *Mann*, 14 Pickering, 480, there was no debt contracted by the mortgagor.

The great question in the case is whether the transaction of February 1, 1875 did not constitute a payment and discharge of the original first mortgage on the premises here in controversy. Upon this the authorities cited by the counsel for the defendants throw no new light. The case *Taft* v. *Boyd*, 13 Allen, 86, merely decides the question whether the old note was paid by the new, under the circumstances of that particular case, was a question of fact to be submitted to the jury. *Crosby* v. *Chase*, 17 Maine, 369, holds only that an apparent discharge of a mortgage will be vacated if the intended consideration fails. *Davis* v. *Maynard*, 9 Mass. 242 ; *Parkhurst* v. *Cummings*, 56 Maine, 155, only state the familiar rule, that the renewal of a note is not payment unless so intended. In other words, the giving of a new note, especially for the same amount, is not conclusive of payment. Nor is any such rule contended for by the plaintiff here. Our contention simply is that the giving of the new note here, under the circumstances of this particular case, is a payment. The, grounds for this we have already reviewed.

*D. D. Stewart* and *A. H. Ware*, for the defendant, cited :
*Rowell* v. *Mitchell*, 68 Maine, 25. No mortgage without a
debt. Jones, Mortgages, § 269 ; *Flagy* v. *Mann*, 14 Pick. 480 ;
*Bayley* v. *Bailey*, 5 Gray, 509 ; *Bodwell* v. *Webster*, 13 Pick.
415 ; *Harrison* v. *Phillips Academy*, 12 Mass. 465 ; *Graves*
v. *Graves*, 6 Gray, 392.

Change in the form of mortgage debt will not discharge the
mortgage. *Taft* v. *Boyd*, 13 Allen, 84 ; *Davis* v. *Maynard*,
9 Mass. 242 ; *Parkhurst* v. *Cummings*, 56 Maine, 155 ; *Crosby*
v. *Chase*, 17 Maine, 369 ; *Pomroy* v. *Rice*, 16 Pick. 24 ; *Hill*
v. *Beebee*, 13 N. Y. 563 ; Jones, Mortgages, § 927.

As to presumption of payment. *Machine Co.* v. *Brock*, 113
Mass. 194 ; *Gregory* v. *Thomas*, 20 Wend. 20 ; *Fowler* v.
*Ludwig*, 34 Maine, 460 ; *French* v. *Price*, 24 Pick. 13 ;
*Kidder* v. *Knox*, 48 Maine, 551 ; *Wilkins* v. *Reed*, 6 Maine,
220 (2 ed. note) ; *Butts* v. *Dean*, 2 Met. 76 ; *Curtis* v. *Hub-
bard*, 9 Met. 328 ; *Perrin* v. *Keene*, 19 Maine, 355 ; *Paine* v.
*Dwinel*, 53 Maine, 52 ; *Page* v. *Hubbard*, Sprague, 335.

Mortgagor can not maintain writ of entry against a mortgagee
in possession. *Rowell* v. *Mitchell*, 68 Maine, 21 ; *Rowell* v.
*Jewett*, 71 Maine, 409.

Deed and defeasance, when and under what circumstances a
mortgage. *Newhall* v. *Pierce*, 5 Pick. 450 ; *Newhall* v. *Burt*,
7 Pick. 158 ; *Smith* v. *Monmouth M. F. Ins. Co.* 50 Maine,
96 ; *Bailey* v. *Myrick*, 50 Maine, 171 ; *Knight* v. *Dyer*, 57
Maine, 174 ; R. S., c. 73, § 9.

Defence to writ of entry. *Stanley* v. *Perley*, 5 Maine, 369 ;
*Walcot* v. *Knight*, 6 Mass. 418 ; *Williams Coll.* v. *Mallett*, 16
Maine, 84 ; *Bussey* v. *Grant*, 20 Maine, 281 ; *Bruce* v. *Mitchell*,
39 Maine, 390 ; *Derby* v. *Jones*, 27 Maine, 357 ; 2 Greenl. Ev.
§ § 331, 556 ; *Chaplin* v. *Barker*, 53 Maine, 275 ; Jackson,
Real Actions, 161.

Foster, J. The plaintiff claims the premises in question
under a mortgage to him from William Quint, dated September
12th, 1874. While the tenant in possession does not claim to
own the premises, or any part thereof, his defence is based on a

title, earlier in point of time, in William Barron, his father, whose agent or servant he is in the occupation and possession of the premises. That title originated in this way. On January 7, 1868, William and Draxcy Quint, and Mary Quint, their mother, conveyed by warranty deed to John S. Paine, who on the same day and as part of the same transaction, gave back a bond to these parties, therein agreeing to reconvey the premises, being the farm where they then lived, upon payment to him by them of the sum of three hundred dollars in annual payments of one hundred dollars each in three, four and five years from date, and also all other debts which the said Quints should thereafter contract with the said Paine. No notes accompanied these transactions. The bond was not recorded till May 26, 1876. November 7, 1874, the Quints obtained $225 more from Paine, and William and Draxcy on that day conveyed to him by warranty deed another small parcel of land adjoining the home farm. February 1, 1875, in consideration of one hundred dollars paid by Paine, Lydia, the wife of William Quint, released her right of dower in the home farm. At the same time William Quint gave Paine his note for $872.34, and Paine gave him back a bond therein agreeing to convey to him the farm and the other parcel named, upon payment by said Quint of the said note. No part of this note has ever been paid. Paine conveyed the the premises, and his title has come to William Barron, the defendant's father, under whom he is in possession.

The plaintiff claims that the deed of January 7, 1868, to Paine and the bond back to the same parties constituted a mortgage of the premises, and that the subsequent transactions of February 1, 1875, between William Quint and Paine, extinguished the mortgage, thereby letting in the plaintiff's title upon which he bases this action to recover possession of the premises.

While we are of the opinion that the deed and instrument of defeasance executed at the same time, and between the same parties, constituted a mortgage, we feel confident that the same was neither paid nor extinguished by what took place between

William Quint and Paine, February 1, 1875. At that time, to be sure, everything due was reckoned up and embraced in the note of $872.34. This included the amount specified in the first bond, the several notes which had been given from year to year as interest on that amount, the sum of about two hundred and twenty-five dollars lent the November before, together with interest on all these sums up to the time the note was given. And we may well assume that it contained all the other indebtedness from the Quints contracted between the time when the first bond was given and the time when the note was dated, inasmuch as the first bond provided for the payment of all other debts, in addition to the specific sum therein named, which the obligees should thereafter contract with the obligor,—and inasmuch also as William Quint himself states, that the note was given not only for the sum named in the first bond but for " all other indebtedness to said Paine from us." His testimony is that the note was given in payment of all matters between the Quints and said Paine. The question is whether it was such payment as amounted to an extinguishment of the mortgage. Paine is dead, and his testimony is not before us. The circumstances surrounding the transaction, taken in connection with the evidence in the case, have an important bearing upon the question, and afford sufficient light by which we are enabled, we think, to judge correctly of the intention of the parties relative to that transaction.

It is the well settled rule of law in this State, as also in Vermont and Massachusetts, that a negotiable note given for a simple contract debt is *prima facie* to be deemed a payment or satisfaction of such debt. But it is equally well settled, if not as frequent in its application, that this presumption may be rebutted and controlled by evidence that such was not the intention of the parties. *Fowler* v. *Ludwig*, 34 Maine, 460; *Dodge* v. *Emerson*, 131 Mass. 467. From these and many other cases it may be seen that the presumption relates to the intention of the parties, and that such presumption may be rebutted by proof of facts or circumstances under which the negotiable paper was received showing that it was not intended

by the parties to operate as payment. Whenever it may properly be inferred that the parties did not so intend, the court, when invested with authority so to do, will ascertain and carry out the intention of the parties.

The circumstances which might have such an effect are so numerous, even in the decided cases, that it would not be proper even if it were possible, to enumerate them in a single opinion. Of the very many that have been spoken of by the courts, we may properly refer to a few as bearing somewhat upon the questions involved in the case before us.

Thus it has been held that where a note is taken in ignorance of the facts, or under a misapprehension of the rights of the parties, as where the negotiable paper is not binding on all the parties primarily liable, the presumption that it was taken in payment is rebutted. *Paine* v. *Dwinel*, 53 Maine, 52; *Kidder* v. *Knox*, 48 Maine, 555; *Melledge* v. *Boston Iron Co.* 5 Cush. 170; *Strang* v. *Hirst*, 61 Maine, 15.

In a number of the decided cases it has been held that where the debt consists of a note secured by mortgage, the renewal of the note is not to be presumed a payment so as to discharge the mortgage—*Taft* v. *Boyd*, 13 Allen, 86—in which case it was held that there is no conclusive presumption that a note and mortgage taken for the amount found due upon a computation of the amounts of former notes secured by mortgages, as well as of mutual claims unsecured by mortgage, were accepted in payment and discharge of such former notes and mortgages.

In *Kidder* v. *Knox*, 48 Maine, 555, it was laid down as a correct principle of law that whenever it appears that the creditor had other and better security than such note for the payment of his debt, it will not be presumed that he intended to abandon such security and rely upon his note.

To the same effect may be cited the case of *Lovell* v. *Williams*, 125 Mass. 442, in which the court say that the fact that such presumption of payment would deprive the creditor taking the note of the substantial benefit of some security, such as a mortgage, guaranty, or the like, would be sufficient evidence to meet and repel the presumption. And the same principle may

be found in the following cases: *Maneely* v. *M'Gee*, 6 Mass. 143; *Cowan* v. *Wheeler*, 31 Maine, 443; *Curtis* v. *Hubbard*, 9 Met. 328; *Tucker* v. *Drake*, 11 Allen, 147; *Machine Co.* v. *Brock*, 113 Mass. 196. In the case last cited a bond with sureties was given, conditioned that the principal should pay for all purchases made by him from the obligee, and it was held that the bond remained in force, notwithstanding the obligee received the notes of the principal for purchases made by him. "Taking the notes, therefore," the court say, "did not extinguish the debt or discharge the sureties. Even if the notes were treated as payment, the sureties would be held, for they bind themselves in terms to pay all notes given to the plaintiffs by Brock and Delano for machines purchased."

Moreover, in another case, where a bond was given, conditioned to secure the balance of account, and the debtor gave his negotiable promissory note to the creditor for the amount of the debt, and received a receipt from the creditor for the balance of account, it was held that the note was not intended as payment of the debt, or a discharge of the bond. *Butts* v. *Dean*, 2 Met. 76.

"The general doctrine is, that the taking of a note is to be regarded as payment only when the security of the creditor is not thereby impaired." *Paine* v. *Dwinel*, 53 Maine, 54.

In many if not most of the cases where the presumption of payment has been held to apply, it will be found that the original claim was not secured. But the cases are numerous in which this presumption has been held to be overcome by the facts and circumstances surrounding the transaction of giving the note, and in addition to those already cited may be added the following as among the more prominent. *Varner* v. *Nobleborough*, 2 Maine, 125; *Wilkins* v. *Reed*, 6 Maine, 221; *Descadillas* v. *Harris*, 8 Maine, 304; *Mehan* v. *Thompson*, 71 Maine, 501; *Parkhurst* v. *Cummings*, 56 Maine, 159; *Perrin* v. *Keene*, 19 Maine, 358; *Atkinson* v. *Minot*, 75 Maine, 193; *Thurston* v. *Blanchard*, 22 Pick. 18; *Appleton* v. *Parker*, 15 Gray, 174; *Grimes* v. *Kimball*, 3 Allen, 520; *Holmes* v. *First Nat. Bank*,

126 Mass. 359; *Dana* v. *Binney*, 7 Vt. 493; *Seymour* v. *Darrow*, 31 Vt. 122.

The facts in this case irresistibly repel the presumption that the note was intended as payment and discharge of the security of January 7, 1868. Not one dollar was paid at the time the note was given. Nor is it pretended that a dollar has actually ever been paid upon the mortgage since its first existence to the time this suit was brought. That mortgage was a lien upon the home farm. The mortgagee, on the very day the note was given, purchased the prospective right of dower from the wife of one of the mortgagors, paying therefor one hundred dollars. For what purpose, it may well be asked, was this purchase of the prospective right of dower in the farm from the wife of William Quint, if the intention of the mortgagee was, in taking the note in question, to release and discharge his mortgage which he then held upon it? If he was a stranger to any title in the farm at the time he received the deed of the wife's dower, certainly it would amount to nothing to him, as nothing would thereby pass by such deed. *Harriman* v. *Gray*, 49 Maine, 537.

It is apparent from the transactions that the parties understood and intended, when the note was given, that the mortgagee should retain his title till the debt was paid. This is shown not only from the fact that the mortgagee at that time purchased in the dower interest, but also from the fact that in the bond given at that time the title to the farm is therein recognized as still remaining in the mortgagee. Nor could it be reasonably supposed that had not such been the understanding of the parties, the mortgagee would have been willing to release the most valuable security, and rely alone upon the individual name of William Quint and a piece of real estate which had but recently been purchased for the sum of two hundred and twenty-five dollars. This understanding and intention is also manifest from the fact that when the indebtedness of the Quints was reckoned up and the note taken and new bond given, there was no cancellation or surrender of the bond of January 7, 1868, neither was there any conveyance made or asked for in accord-

ance with the terms of that bond. *Watkins* v. *Hill*, 8 Pick. 523.

In view of these facts and circumstances together with the evidence before us, it is impossible to arrive at any other conclusion than that it was the intention of the parties by their transactions of February 1, 1875, to leave the former security unaffected, and that the note was not intended as payment of the debt due at that time. There was a change in the form of the debt, but there was no actual payment of it. That is not enough to affect the mortgage. Nothing but payment of the debt or its release will discharge a mortgage. *Crosby* v. *Chase*, 17 Maine, 369 ; *Parkhurst* v. *Cummings*, 56 Maine, 159 ; *Ladd* v. *Wiggin*, 35 N. H. 426. "The mortgage remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note, or by giving a different instrument as evidence of the debt." Jones on Mort. § 924 ; *Pomroy* v. *Rice*, 16 Pick. 24.

At the time the plaintiff acquired his mortgage from William Quint, neither of the bonds which had been given by Paine had been recorded, and the apparent record title to the premises was in John S. Paine. The bonds were not placed upon record till May 26, 1876—more than a year and eight months after the plaintiff's title accrued, and then by his procurement. Moreover, as late as February 24, 1879, the plaintiff appears to have understood that Paine's mortgage was a valid, subsisting claim upon the premises, and that he held only the right of redemption under it, as appears by his statements in writing contained in the notice and demand by him on Paine's administrator for an account of the sum due on the mortgage.

Paine's interest passed and became vested in William Barron, who is in possession, as the evidence discloses, by his agent or servant—the defendant in this suit. The rights of the defendant are the same, therefore, as those of the person whom he represents by that possession. This action could not be maintained by the mortgagor against the mortgagee or his assignee in possession without showing a satisfaction of the mortgage. Neither can it be maintained by the grantee of the mortgagor.

*Woods* v. *Woods*, 66 Maine, 206; *Jewett* v. *Hamlin*, 68 Maine, 172; *Rowell* v. *Jewett*, 71 Maine, 409.

*Judgment for the defendant.*

PETERS, C. J., DANFORTH, VIRGIN, LIBBEY and HASKELL, JJ., concurred.