1998 ME 279

**ST. AGATHA FEDERAL
CREDIT UNION**

v.

**Robert J. OUELLETTE et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 14, 1998.
Decided Dec. 30, 1998.

Daniel L. Cummings, Norman, Hanson & DeTroy, Portland, for plaintiff.

Richard D. Solman, Solman & Hunter, P.A., Caribou, for Northern Maine Development Commission.

William J. Smith, Van Buren, for Robert & Theresa Ouellette.

Michael S. Haenn, Bangor, for Key Bank.

Hugh S. Kirkpatrick, Caribou, for Aroostook County Fed. Savings & Loan Ass'n.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] St. Agatha Federal Credit Union (St.Agatha) appeals from the summary judgment entered in the District Court (Madawaska, *Daigle, J.*) in favor of Robert and Theresa Ouellette. St. Agatha contends that the District Court erred in concluding as a matter of law that the 1988 mortgage, pursuant to which this foreclosure action was commenced, did not secure the 1994 note. Because a genuine issue of material fact exists as to the intent of the parties when the Ouellettes signed the 1994 note, and whether the 1994 note is secured by the 1988 mortgage, we vacate the District Court's entry of the summary judgment.

[¶ 2] In March of 1988, St. Agatha loaned the Ouellettes $214,811.12. The Ouellettes signed an adjustable rate mortgage note (1988 note) in favor of St. Agatha, evidencing their debts. The 1988 note was secured by a recorded Mortgage Deed (1988 mortgage) from the Ouellettes to St. Agatha. The 1988 mortgage states. "The note signed by borrower and dated March 4, 1988 will be called the 'Note.'" The 1988 mortgage acknowledges that the Ouellettes owe St. Agatha $214,811.12. The Ouellettes pledged to give St. Agatha rights in the described property "to protect [St. Agatha] from possible losses that might result if [the Ouellettes] fail to ... [p]ay all the amounts that [they] owe [St. Agatha] as stated in *the Note*." (Emphasis added). The 1988 mortgage does not include a future advance clause.

[¶ 3] On June 29, 1994, the Ouellettes signed a mortgage in favor of Key Bank of Maine to secure a $150,000 debt. On November 10, 1994, the Ouellettes signed a mortgage in favor of Northern Maine Development Commission. That mortgage secured a loan of $108,000 with the same property that secured St. Agatha's loan to the Ouellettes.

[¶ 4] Eight days later, on November 18, 1994, the Ouellettes signed another Mortgage Note (1994 note) in favor of St. Agatha in the amount of $159,546.92. The 1994 note refinanced the outstanding obligation, evidenced by the 1988 note, reducing the interest rate by 1.75 percent, reducing the monthly payment by $537.34 and extending the repayment period by three years. The 1994 note was marked with a different loan number and account number. The 1994 note states that it is secured by the mortgage dated March 4, 1988. The 1988 mortgage was not amended to reference the 1994 note.

[¶ 5] In February of 1995, the Ouellettes defaulted on their obligations. St. Agatha filed a complaint in the District Court, pursuant to 14 M.R.S.A. § 6321 (Supp.1998), seeking foreclosure.[1] St. Agatha later moved for

---

1. At the time of the foreclosure proceeding, three parties held a properly recorded security interest in the property that is the subject of the foreclosure. The parties agree that the Aroostook County Federal Savings & Loan Association holds two mortgages creating security interests that have priority over all other parties. Because the amount of indebtedness secured by those outstanding obligations is less than the value of the property in question, two additional parties, St. Agatha and the Northern Maine Development Commission, potentially could gain from a foreclosure proceeding. If St. Agatha's 1988 mortgage secures its 1994 note, St. Agatha would have priority over the Northern Maine Develop-

ment Commission's interest with respect to the remaining value of the property. If the 1988 mortgage does not secure the 1994 note, the Northern Maine Development Commission's interest in the property will have priority over St. Agatha's interest. Although Key Bank is listed as a party-in-interest in this foreclosure proceeding. Key Bank admits that it does not have an interest in the real estate that is the subject of this proceeding. While this foreclosure proceeding was pending, the Ouellette's filed a petition under Chapter 7 of the Bankruptcy Code and received a discharge. Thus, this appeal involves the inter-

a summary judgment in its favor pursuant to M.R. Civ. P. 56. In its statement of material fact, St. Agatha stated that both notes were secured by the original 1988 mortgage, St. Agatha also submitted an affidavit from Mary Ann Chamberlain, a credit union manager, reciting that the 1988 mortgage secured both notes. In its memorandum of law in support of its motion, St. Agatha asserted that the 1994 note was an agreement to refinance the 1988 note so as to allow the Ouellettes to obtain a lower interest rate. St. Agatha also stated that it did not give any additional money to the Ouellettes in 1994.

[¶ 6] The Ouellettes opposed St. Agatha's motion and moved for a summary judgment in their favor. In his affidavit in opposition to St. Agatha's summary judgment motion, Robert Ouellette stated, "The note given by Robert J. Ouellette and Theresa M. Ouellette to St. Agatha Federal Credit Union dated March 4, 1988 in the amount of $214,811.12 ... was paid off and refinanced with St. Agatha Federal Credit Union and Key Bank." He further stated, "The mortgage dated March 4, 1988 ... was given to secure the note dated March 4, 1988. No mortgage was given to secure the note dated November 18, 1994."

[¶ 7] The District Court granted the Ouellettes' motion and entered a summary judgment in favor of the Ouellettes on the ground that "the 1988 mortgage which Plaintiff seeks to foreclose does not secure the 1994 note which Plaintiff claims Defendants have defaulted." St. Agatha appealed directly to this Court pursuant to 14 M.R.S.A. § 1901(2)(A) (Supp.1998).[2]

[¶ 8] In reviewing a court's entry of a summary judgment, "we examine the evidence in the light most favorable to the party against whom the judgment was entered to determine whether the trial court committed an error of law." *Casco Northern Bank, N.A. v. Edwards*, 640 A.2d 213, 215 (Me.1994). A summary judgment will be upheld "if the record discloses that there is no genuine issue of material fact and that any party is entitled to a judgment as a matter of law." *Bahre v. Pearl*, 595 A.2d 1027, 1032 (Me.1991); *see also Tondreau v. Sherwin–Williams Co.*, 638 A.2d 728, 730 (Me.1994) (stating that a summary judgment is proper when parties do not dispute facts, but differ only with respect to proper legal conclusions to be drawn from the facts).

[¶ 9] It is axiomatic that the payment of a debt secured by a mortgage extinguishes the mortgage lien. *See, e.g., Williams v. Thurlow*, 31 Me. 392, 394 (1850). The difficulty arises in determining what constitutes payment. Generally, the giving of a note presumptively constitutes payment of a debt only when the security of the creditor is not impaired. *See Bunker v. Barron*, 79 Me. 62, 68, 8 A. 253, 255 (1887). In situations where the debt is not secured, a negotiable note given for a simple contract debt is presumed to pay or satisfy that debt. *See Bunker*, 79 Me. at 66, 8 A. at 254. This presumption can be rebutted by evidence that satisfaction of the debt was not the intention of the parties. *See Bunker*, 79 Me. at 66, 8 A. at 254–55. When a debt is evidenced by a note secured by a mortgage, however, the renewal of the note does not

---

ests of the Northern Maine Development Commission and St. Agatha.

**2.** St. Agatha initially appealed the District Court decision to the Superior Court pursuant to M.R. Civ. P. 76D. Section 1901 of Title 14, however, requires that a judgment entered in a foreclosure proceeding be directly appealed to the Supreme Judicial Court. 14 M.R.S.A. § 1901(2)(A) (Supp. 1998). After realizing it had not followed the proper procedure, St. Agatha filed a motion informing the Superior Court that it did not have jurisdiction to hear the appeal. If the District Court decision had been final, St. Agatha would have missed the deadline for appealing to this Court. *See McNamara v. Elbthal*, 515 A.2d 747, 748–49 (Me.1986) (affirming dismissal of appeal

of foreclosure judgment filed in Superior Court instead of Supreme Judicial Court). The original judgment entered by the District Court, however, was not final. *See* M.R. Civ. P. 54(b). St. Agatha had sought an entry of a summary judgment on two claims. The District Court resolved the first claim but failed to enter a judgment on the issue of liability on the 1994 note. After the removal from Superior Court, St. Agatha filed a motion with the District Court requesting a final judgment. The District Court entered a judgment in favor of the Ouellettes on the issue of liability on the 1994 note because the Ouellettes had obtained a bankruptcy discharge while this litigation was pending. St. Agatha filed this appeal following the entry of the final judgment.

presumptively discharge the mortgage, because it cannot be presumed that a creditor intended to abandon the protection of the original security to rely solely upon the note. *See Bunker,* 79 Me. at 67–68, 8 A. at 255. Again, the intention of the parties is central to this determination.

▮▮▮ [¶ 10] A renewal of a note that merely changes the *form* of the evidence of the indebtedness is insufficient to constitute payment of a debt and discharge of a mortgage. *See Jones v. New York Guaranty and Indem. Co.,* 101 U.S. 622, 630, 25 L.Ed. 1030 (1879); *Buck v. Wood,* 85 Me. 204, 209–10, 27 A. 103, 104–05 (1892); *Bunker,* 79 Me. at 70, 8 A. at 256; *see also* 55 Am. Jur.2d § 321 ("The holder of a junior encumbrance is regarded as taking his interest subject to possible extension of time of payment of the debt secured by the senior encumbrance."). A note is simply evidence of a debt; the mortgage secures the debt, not the note. *See Buck,* 85 Me. at 209, 27 A. at 105. Thus, the giving of a different instrument as evidence of the debt does not affect the relationship between the mortgage and the debt. *See Buck,* 85 Me. at 209–10, 27 A. at 105. As we have stated, nothing short of actual payment of the debt or an express release will discharge a mortgage. *See id.; Bunker,* 79 Me. at 70, 8 A. at 256. If the 1994 note indeed paid the 1988 debt, as the Ouellettes contend, the 1994 debt is not secured by the 1988 mortgage. If the 1994 note simply altered the repayment terms of the 1988 obligation, as St. Agatha contends, the 1994 note is secured by the 1988 mortgage.

▮▮▮ [¶ 11] Future advances are "debts or obligations secured by a mortgage that arise subsequent to the execution and recording of the mortgage...." 33 M.R.S.A. § 505(1)(B) (Supp.1998) (explicitly made applicable to credit union mortgages by 9–B M.R.S.A. § 855(2) (1997)). A future advance receives priority only when the original mortgage explicitly provides security for future advances. *See* 33 M.R.S.A. § 505(2) (Supp. 1998); 9–B M.R.S.A. § 436(3) (1997).[3] The 1988 mortgage does not have such a provision. If the 1994 note was an agreement to refinance that did not involve any additional advancements of money, although the piece of paper that evidences the Ouellettes's debt arose subsequent to the mortgage, the actual debt underlying the piece of paper arose simultaneously with the 1988 mortgage. The 1994 note, then, would not constitute a future advance. On the other hand, if the 1994 note paid all or part of the 1988 obligation such that additional debt arose in 1994, the 1994 debt would constitute a future advance and may be partially or wholly unsecured.

▮▮▮ [¶ 12] If there exists a genuine issue of material fact as to the intent of the parties when the Ouellette signed the 1994 note and thus the proper characterization of the 1994 note, summary judgment was improperly entered. Material submitted by St. Agatha suggest that the 1994 note merely changed the instrument evidencing the 1988 indebtedness and was not intended to pay the 1988 debt. First, St. Agatha's right to repayment of the debt evidenced by the 1988 note was protected by the 1988 mortgage. If the 1994 note functioned to discharge the 1988 mortgage, St. Agatha would have voluntarily increased its risk without reportedly receiving any consideration in return. Second, St. Agatha contends that the parties negotiated and altered the interest rate, the amount of the monthly payment and the length of the repayment period, but did not alter the amount of money owed to St. Agatha. St. Agatha avers that "there was no new money given" in 1994. Third, the 1994 note specifically states that it is secured by the 1988 mortgage, further suggesting that the 1994 note was merely an agreement to alter the conditions of repayment of the debt evidenced by the 1988 note.

---

3. St. Agatha contends that 9–B M.R.S.A. § 436 does not apply to this financing situation. Section 436(1) refers to property interests mortgaged to "financial institutions." 9–B M.R.S.A. § 436(1) (1997). The term "financial institution" only encompasses credit unions in a limited number of specifically designated provisions. *See* 9–B M.R.S.A. § 131(17) (Supp.1998). Section 436 is not one of the provisions where credit unions are included within the definition of "financial institution." *See id.* Nonetheless, section 436 is made applicable to credit unions through 9–B M.R.S.A. § 855(2) (1997).

[¶ 13]  Alternatively, affidavits submitted by the Ouellettes suggest that the 1994 note was intended to pay the 1988 debt and therefore is not secured by the 1988 mortgage. Robert Ouellette asserts in an affidavit that the 1988 mortgage did not secure the 1994 note because the 1994 refinancing transaction paid the 1988 debt.  The materials submitted by St. Agatha and the Ouellettes reveal the existence of a genuine issue of material fact as to the intent of the parties in signing the 1994 note.  Accordingly, the summary judgment was improperly entered.

The entry is:

Summary judgment vacated.  Remand to District Court for further proceedings consistent with this opinion.

