1999 ME 48

**TOWN OF FREEPORT**

v.

**Thornton D. RING, et al.**

Supreme Judicial Court of Maine.

Argued Feb. 2, 1999.

Decided March 15, 1999.

Robert J. Crawford (orally), Geoffrey H. Hole, Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for plaintiff.

Jed J. French (orally), Powers & French, P.A., Freeport, Frances L. Rice, Yarmouth, for defendants.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] Thornton D. Ring appeals from a summary judgment entered in the Superior Court (Cumberland County, *Calkins J.*) in favor of the Town of Freeport. The judgment is based on the court's conclusion that the Town holds title in fee simple absolute to Ring's Main Street property following the automatic foreclosure of a 1995 real estate tax lien. Ring contends, *inter alia*, that (1) the check in the amount of $11,347.09 that he sent to the Town redeemed his property prior to the time for automatic foreclosure; and (2) the Town is equitably estopped from claiming ineffective indorsement of the check because its letter rejecting the check stated an entirely different reason for rejection. We affirm the judgment.

[¶ 2] On April 1, 1993, the Town of Freeport assessed real estate taxes for the fiscal year 1993–1994 (1994 taxes) against Ring's property located at 2 Main Street. On August 8, 1994, because taxes, interest, and fees in the amount of $2,811.52 still remained unpaid, the Town sent Ring a lien claim and a 30-day Notice of Demand of Payment by certified mail. The taxes remained unpaid as of September 9, 1994, prompting the Town to file a tax lien certificate in the Cumberland County Registry of Deeds pursuant to 36 M.R.S.A. §§ 942, 943 (1990 & Supp.1998). On June 8, 1995 and August 3, 1995, Ring sent payments in the amounts of $392.61 and $577.94 respectively, which were credited toward the outstanding 1994 taxes. On January 24, 1996, because a portion of the taxes still remained unpaid, the Town sent a Notice of Impending Foreclosure of the Tax Lien Certificate to Ring and Elizabeth Ring, the record mortgage holder,[1] via certified mail. The notice stated that the tax lien mortgage will be deemed to be foreclosed and the right of redemption will expire on February 27, 1996. Eighteen months following the filing

---

1. Ring received the property from his father, Elmer Ring, in September of 1986. In 1992, Ring gave his father a mortgage on the property.

Ring's father died in March of 1995. Elizabeth Ring, was named personal representative of the estate.

of the tax lien certificates, the taxes remained unpaid.

[¶ 3] On April 1, 1994, the Town assessed real estate taxes for fiscal year 1994–1995 (1995 taxes) against Ring's Main Street property. When the Town had not received payments for these taxes as of July 28, 1995, the Town sent Ring a lien claim and a 30–day Notice of Demand for Payment by certified mail. Because taxes, fees, and interest totaling $2,931.22 remained unpaid as of September 7, 1995, the Town filed a tax lien certificate in the Cumberland County Registry of Deeds. The Town sent a copy of the tax lien certificate to Elizabeth Ring and a Notice of Impending Foreclosure of the Tax Lien Certificate to both Ring and Elizabeth Ring. The notice explained that the tax lien would be deemed foreclosed and the right of redemption would expire on March 7, 1997 if the amount owed was not paid.

[¶ 4] In January of 1997, Ring delivered to the Town a check in the amount of $11,347.09. The check was issued by Advest, Inc. and made payable to the order of Thornton D. Ring. The back of the check was inscribed as follows:

Payable To Town of Freeport
Property Taxes
2 Main st[.]

The check was accompanied by a letter, signed by Ring and dated January 20, 1997, which reads, "I have paid $11,347.09 of real estate taxes and request the appropriate action to redeem the corresponding property." On February 3, 1997, Ring received a letter from the Town which explained that the Town was returning the check because the 1994 tax lien on the property had matured in 1996.[2] The letter also explained,

> The Council is currently reviewing its policy on tax acquired property.... Until the committee recommends changes in policy, if any, no decisions will be made on the disposition of any properties that have been acquired by the Town through the tax foreclosure process.

No further correspondence occurred regarding Ring's Main Street property, and Ring took no further action to redeem the property.[3]

[¶ 5] The Town filed a complaint in the Superior Court seeking equitable relief pursuant to 36 M.R.S.A. § 946 (1990) and for a declaration pursuant to 14 M.R.S.A. § 5954 (1980), confirming the Town's title to the property. The Town moved for a summary judgment. Ring opposed the Town's motion for a summary judgment and moved for a summary judgment in his favor. The Superior Court concluded,

> Because the statutory requirement was not strictly followed in this case, the tax lien certificate for the 1994 taxes is invalid. If the 1994 taxes were the only issue in this case, summary judgment would be granted for Thornton Ring. However, because the court concludes ... that the foreclosure of the 1995 tax lien is valid, judgment must be granted to Freeport.

Ring appeals the trial court's entry of a summary judgment in favor of the Town.[4]

[¶ 6] The filing of a tax lien certificate with a registry of deeds by a town creates a tax lien mortgage to secure the payment of outstanding taxes. *See* 36 M.R.S.A. §§ 942,

2. Although the 1995 lien would not mature until March of 1997, the 1994 lien, if valid, would have matured in 1996.

3. Ring also did not pay the amounts owed for wastewater and sewer services provided to Ring's Main Street property by the Freeport Sewer District between 1992 and 1997. During these five years, the District filed 18 liens, at least three of which automatically foreclosed prior to 1997, to secure collection of $2,389.93 of unpaid fees. On February 12, 1997, the Town and the District entered into an agreement whereby in the event both the Town and the District placed liens on the same property, the Town would tender the full amount of outstanding fees in exchange for the District's interest in the property acquired through foreclosure of the sewer liens. The Town paid the outstanding fees secured by the District's liens on the Ring property in November of 1997 and received the District's interests in the Ring property through a release deed. Ring challenges the validity of the sewer liens and the Town's interest in the liens. Because we conclude that the Town acquired title to the Ring property through automatic foreclosure of the 1995 tax lien, we do not address these issues.

4. The Town has not challenged the trial court's determination that the automatic foreclosure based on the 1994 lien certificate is invalid.

943 (1990 & Supp.1998). The tax lien mortgage continues to exist until the taxes are paid or until the lien is terminated by operation of law. *See* 36 M.R.S.A. § 552 (1990). A taxpayer has an eighteen month period following the filing of the tax lien certificate to redeem the property by paying the outstanding taxes, plus interest and fees. *See* 36 M.R.S.A. § 943. If the taxes, interest, and fees are not paid within eighteen months after the date of filing, the tax lien mortgage is deemed to have been foreclosed. *See id.* Because the Town filed the tax lien certificate with the registry of deeds on September 7, 1995, Ring had to redeem his property by March 7, 1997.[5] Ring delivered a check to the Town in January of 1997. The Superior Court, however, concluded that the check did not constitute payment of the outstanding taxes:

> With an endorsement, Freeport would have been able to cash the check; without the endorsement, it is doubtful that Freeport could have cashed it. The Court concludes that the unendorsed check delivered by Thornton Ring to Freeport was not a tender of payment, and Freeport was not required to accept it as payment of any of the outstanding taxes.

■■■■ [¶ 7] We review a trial court's entry of a summary judgment by "examin[ing] the evidence in the light most favorable to the party against whom the judgment was entered to determine whether the trial court committed an error of law." *St. Agatha Fed. Credit Union v. Ouellette*, 1998 ME 279, ¶ 8, 722 A.2d 858 (citation omitted). An entry of a summary judgment is proper "if the record discloses that there is no genuine issue of material fact and that any party is entitled to a judgment as a matter of law." *Id.* (quoting *Bahre v. Pearl*, 595 A.2d 1027, 1032 (Me. 1991)); *see also Tondreau v. Sherwin–Williams Co.*, 638 A.2d 728, 730 (Me.1994) (summary judgment is appropriate when parties differ only with respect to proper legal conclusions to be drawn from given set of undisputed facts).

[¶ 8] With respect to a check that is made payable to the order of a specific person, negotiation occurs, and the person receiving the check becomes a holder of a negotiable instrument, if possession of the check is transferred and the check is indorsed by the transferor. *See* 11 M.R.S.A. § 3–1201(1), (2) (1995). An indorsement is a signature of someone other than the maker, or some other designation identifying the indorser, that is made on an instrument for the purpose of negotiating the instrument. *See* 11 M.R.S.A. § 3–1204(1) (1995); *Kelly v. Central Bank & Trust Co.*, 794 P.2d 1037, 1042 (Colo.Ct.App. 1989) (writing on back of check which reads "For deposit only" to an account other than the payee's and without payee's signature is not an effective indorsement); *see also* 5 ANDERSON, THE UNIFORM COMMERCIAL CODE, § 3–202:24–:28 (3d ed.1984). If negotiation occurs and the holder qualifies as a holder in due course, the holder can demand payment of the instrument subject only to real defenses. *See* 11 M.R.S.A. §§ 3–1302, 3–1305 (1990).

■■ [¶ 9] The check Ring sent to the Town was issued by Advest, Inc., payable to the order of Thornton D. Ring. Because it was payable to Ring's order, the check could only be negotiated by Ring through indorsement and transfer of possession. *See* 11 M.R.S.A. § 3–1201(2). Ring's signature, however, does not appear on the back of the check. The words that do appear on the back of the check—"Payable To Town of Freeport[/]Property Taxes[/]2 Main st[.]"— do not identify Ring. *Id.* The words only indicate to whom the instrument should have been payable had the check been properly indorsed. Thus, the writing is an incomplete attempt to create a special indorsement.[6]

---

**5.** Ring does not contest the filing or the perfection of the 1995 tax lien.

**6.** Ring contends that the signature of Advest, Inc. is a signature of the check. The statute explicitly states, however, that an indorsement is a signature of anyone other than the maker or issuer of the instrument. *See* 11 M.R.S.A. § 3–1204(1). Ad-

vest, Inc. is the issuer of the check. Alternatively, Ring cites to section 3–1401's description of a signature in support of its position that the check was properly indorsed. That section, however, refers to the means through which indorsers can become liable on the instrument, so-called indorser's liability. *See* 11 M.R.S.A. § 3–1401(1), (2) (1995). That section is not applicable in the

*See* 11 M.R.S.A. § 3–1205(1) (1995). A special indorsement is an indorsement that identifies a person to whom the indorser is making the check payable. *See id.* The special indorsement still must be signed or otherwise indorsed by the person to whom the check was originally payable. *See id.* Although Ring could attempt to prove that the words were intended to indorse the instrument in a judicial proceeding brought by the Town to gain payment of the check, payment for purposes of redemption in tax lien cases cannot be contingent upon proof at a judicial proceeding.

▓▓▓ [¶ 10] The statement included within the letter accompanying the check does not serve as a valid indorsement either. In determining whether an instrument is properly indorsed, any papers affixed to the instrument are considered part of the instrument. *See* 11 M.R.S.A. § 3–1204(1). This language specifically references only "affixed" documents. *Id.* Courts interpreting this language have concluded that a signature on a separate, unattached piece of paper is not an indorsement of the instrument.[7] *See, e.g., Big Builders, Inc. v. Israel,* 709 A.2d 74, 76 (D.C.1998) (citing 5A ANDERSON, THE UNIFORM COMMERCIAL CODE § 3–202:48 at 498 (3d ed.1994)); *see also Adams v. Madison Realty & Dev. Inc.,* 853 F.2d 163, 166–67 (3d Cir.1988). Ring does not dispute that there is no evidence on record to suggest that the letter was physically attached to the check.[8]

[¶ 11] Relying on 11 M.R.S.A. §§ 3–1203(3) and 3–1203(2) (1995), Ring also contends that even in the absence of an indorsement, the check should have been accepted

as payment of his outstanding taxes because the Town (1) had a statutory right to demand an indorsement of the check, or (2) was entitled to enforce the instrument without the indorsement. Title 11 M.R.S.A. § 3–1203(3) provides that "if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor. . . ." Section 3–1203(2) provides, "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument. . . ."

▓▓ [¶ 12] Even if the Town could demand an indorsement pursuant to § 3–1203(3), negotiation does not occur until the indorsement is made. *See* 11 M.R.S.A. § 3–1203(3). Thus, at the time the check was received, the Town had a right to demand an indorsement, but could not go to the bank to demand payment of the check. Pursuant to 11 M.R.S.A. § 3–1203(2), the bank also had the right to enforce the instrument as the transferee of an instrument from a holder. That right, however, could be enforced only through a judicial proceeding.[9] Such contingent rights to receive payment are not sufficient to redeem property subject to a municipal tax lien. Checks are meant to be the functional equivalent of cash when they are properly issued and negotiated. If the Town has to institute a judicial proceeding to receive the cash equivalent of the check, the check has not served its purpose. The unindorsed check presented to the Town is not

---

determination of whether an instrument is properly indorsed for purposes of receiving payment.

**7.** An indorsement on a separate sheet of paper is technically called an allonge. *See Big Builders,* 709 A.2d at 77. Many courts have held that signatures included on an allonge are only effective as an indorsement of an instrument if there is no room on the instrument itself for an indorsement. *See id.; see also Pribus v. Bush,* 118 Cal.App.3d 1003, 173 Cal.Rptr. 747, 749 (Ct.App. 1981).

**8.** A further problem with this unattached piece of paper is its failure to specifically reference the

check or state an intent to serve as the indorsement of the check.

**9.** The Comment 2 to section 3–1203 states,

Because the transferee's rights are derivative of the transferor's rights, those rights must be proved. Because the transferee is not a holder, there is no presumption under Section 3–308 that the transferee, by producing the instrument, is entitled to payment. The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it.

the type of payment the redemption option of the tax lien statute contemplates.

[¶ 13] Finally, Ring contends that the Town should be equitably estopped from arguing that the check was not properly payable to the Town because the Town informed Ring that it was rejecting the check because the lien on the property had matured in 1996. We disagree. The doctrine of equitable estoppel may not be invoked against a municipality in the exercise of its taxation responsibilities. *Flower v. Town of Phippsburg*, 644 A.2d 1031, 1031 (Me.1994). Such responsibilities are "the paramount function of government by which it is enabled to exist and function at all." *Id.* (quoting *Maine Sch. Admin. Dist. No. 15 v. Raynolds*, 413 A.2d 523, 533 (Me.1980)).

[¶ 14] Moreover, the elements of equitable estoppel are lacking in any event. The doctrine only applies when an individual makes "misrepresentations, including misleading statements, conduct, or silence, that induce detrimental reliance." *Department of Human Servs. v. Bell*, 1998 ME 123, ¶ 8, 711 A.2d 1292. The Town did not act in bad faith, nor did it make any misrepresentations to Ring in its rejection letter. At the time of Ring's attempted payment, the tax lien securing payment of the 1994 taxes had presumptively foreclosed. Ring took no further action on receipt of the Town's letter. If a municipality meets the statutory notice requirements, as the Town did with respect to the 1995 taxes, "... the opportunity to avoid forfeiture is available to the property owner and the burden reposes fully on him to do so by appropriate action." *McNaughton v. Kelsey*, 1997 ME 182, ¶ 8, 698 A.2d 1049 (citations omitted). At all times, "[t]he taxpayer has a duty to learn what is being done to enforce the payment of taxes against his property." *City of Auburn v. Mandarelli*, 320 A.2d 22, 30 (Me.1974). The Town had no duty to accept a check that was not properly payable or to further warn Ring of the consequences of his inaction.[10]

[¶ 15] Because there is no genuine issue of material fact and the $11,347.09 check Ring sent to the Town does not constitute payment of the outstanding taxes as a matter of law, the tax lien certificate for the 1995 real estate taxes is deemed to have foreclosed on March 7, 1997 and the entry of the summary judgment in favor of the Town was proper.

The entry is:

Judgment affirmed.

---

10. Ring also contends in his brief on appeal that the Town's failure to redeem the property and its reasons for rejecting his check violated his constitutional right to due process. A review of the record indicates that Ring raises this issue for the first time on appeal. Constitutional issues must be raised prior to appeal to be properly preserved for appellate review. *See Berg v. Bragdon*, 1997 ME 129, ¶ 9, 695 A.2d 1212.