STATE OF MAINE                          SUPERIOR COURT
WASHINGTON, ss.                         CIVIL ACTION
                                        DOCKET NO. CV-01-20
                                        AMM - WAS - 12/11/2002

JAMES H. GUERTIN,        )
                         )
        Plaintiff        )
                         )
    v.                   )              ORDER    DONALD L. GARBRECHT
                         )                       LAW LIBRARY
CITY OF EASTPORT and )
GEORGE FINCH,            )
                         )                       JAN 2 2003
        Defendants       )

Pending before the Court is the City of Eastport's and George Finch's (the

"Defendants") Motion for Summary Judgment.

## Background

Quoddy Realty Corporation owned two parcels of land in the City of Eastport

("Eastport") in January 1994.[1] DSMF ¶2. Eastport valued to the parcels at $292,597.00

for tax year 1994-95, and assessed taxes based on that amount. DSMF ¶3. Eastport

continued to value of the two parcels at $292,597.00 for the 1995-1996 tax year. DSMF

¶4. In 1996 James Guertin ("Guertin") mortgaged the Quoddy Realty Property to Bangor

Savings Bank for $38,500.00 and used the proceeds to purchase a commercial fishing

vessel, which became his livelihood. PSMF ¶1.

Guertin applied for tax abatements for the 1994-95 and 1995-96 tax years, which

Eastport denied. DSMF ¶5, ¶7. Guertin based the applications on a real estate appraisal

that suggested an actual market value of $69,250.00. ¶6. Guertin appealed the denial to

the Washington County Commissioners ("WCC"). DSMF ¶8. On April 6, 1995, the

---

[1] James Guertin was the President of Quoddy Realty Corporation, and is successor in title to the Corporation. Although the Defendants refer to Quoddy this order refers only to Guertin, the named defendant.

1

WCC denied the 1994-95 tax appeal and on November 21, 1996 granted a 15% reduction for functional obsolescence on the building. DSMF ¶8. On July 6, 2000, as the result of a Law Court decision in 1998, the WCC determined that for the 1994 and 1995 tax years the assessed value of the building should be $69, 250.00.[2] DSMF ¶9, PSMF ¶5. During the abatement process for the 1994-95 and 1995-96 tax years, Eastport valued the two parcels at $227,813.00 for tax years 1996-97, 1997-98, 1998-99, and 1999-00. DSMF ¶10, PSMF ¶5. Following the WCC's decision to abate the taxes for the 1994-95 and 1995-96 tax years, Guertin requested that Eastport retroactively abate its assessments for tax years 1996-97 through 1999-00, which Eastport apparently denied. DSMF ¶11. Guertin did not appeal Eastport's rejection of his tax abatement applications for tax years 1996-97 through 1999-00. DSMF ¶1.

Eastport issued a lien certificate to Guertin on May 26, 1998, for failure to pay property taxes for the 1997-98 tax year. DSMF ¶12. The standard form contained a typographical error with stated that the tax was committed for collection on July 31, 1998, the year should have read 1997. DSMF ¶12. Guertin did not pay the taxes or the fees the lien certificate described. DSMF ¶12. On May 28, 1999, Eastport issued another lien certificate to Guertin for failure to pay taxes for the 1998-99 tax year, and again Guertin did not pay. DSMF ¶13. As a result Eastport notified Guertin that it had recorded a tax lien mortgage and would foreclose upon the mortgage on November 28, 2000. DSMF ¶13. On May 26, 2000, Eastport issued another lien certificate to Guertin Realty Corporation for failure to pay taxes for the 1999-00 tax year, and again Guertin

---

[2] The Court ruled that "On remand the Commissioners must give due consideration to the Maine Constitution which requires that "[a]ll taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." Quoddy Realty Corporation v. City of Eastport, 1998 ME 14, ¶9, 704 A.2d 407 (quoting Me. Const. art. IX, 8). "Just value means market value." Id.

failed to pay the taxes or fees described in the lien certificate. DSMF ¶14. Eastport notified Guertin that it had recorded a tax lien mortgage and would foreclose on the mortgage on November 26, 2001. DSMF ¶14. Guertin has made good faith attempts to settle his tax issue with the defendants since January 1998, however he claims the Defendants insist upon enforcing tax liens based upon grossly excessive valuations, far beyond just value, despite full knowledge of the Maine Supreme Court's decision which resulted in the tax abatements for the 1994-95 and 1995-96 tax years. PSMF ¶9.[3]

Bangor Savings Bank paid the taxes due under the lien certificate recorded in Book 2245, Page 001 (the lien with the incorrect date), declared Guertin's loan in default and accelerated the note. PSMF ¶2. In order to prevent foreclosure Guertin sold his fishing vessel, at a price below market value. PSMF ¶3. Guertin paid Bangor Savings Bank $29,053.97 and the bank released its mortgage. PSMF ¶4.

Guertin claims that Defendant George Finch ("Finch") had a plan to acquire his property, demolish his buildings, and erect affordable housing.[4] Plaintiff's Complaint ¶31. Guertin reviewed documents at the Eastport City Hall concerning a Department of Economic and Community Development Block Grant which describe, in a document dated December 1, 1999, property including Guertin's located in Quoddy village as "Eastport's worst case housing". PSMF ¶6. The documents further describe the buildings as "old and dilapidated". On page 5 of the grant application, signed by Finch, it states the "mean value" of the houses in the village is stated to be about $24,000.00 according to tax records and further states that "the owners of these properties are not

---

[3] The Defendants qualify this statement and claim that it is inconsistent with Guertin's admission that he did not appeal Eastport's rejection of his tax abatement applications for tax years 1996-97 through 1999-00. However, the Defendants admit the statement for the purpose of this motion because they claim its admission is not material. DRPSMF ¶9.

[4] At all relevant times George Finch was the city manager for the Town of Eastport.

building any equity into their houses, instead they are losing value." PSMF ¶6. The Defendants have acquired properties surrounding Guertin's real estate in Quoddy village over the last few years and have applied for grant funds to renovate them. PSMF ¶7. The grant agreement provides $300,000.00 in Community Development Block funds to Eastport for the period June 10, 2001 to December 30, 2002 and confirms the grantee's intention to acquire real estate, rehabilitate residences, and demolish others. PSMF ¶8.[5] At all relevant times, Finch was aware of the Guertin's financial situation and mortgage with Bangor Savings Bank. Plaintiff's Complaint ¶30.

Finch told Lynn Jepson in May 1998, that "they were going to tear down the old Grossman's building", in reference to Guertin's property in Quoddy Village. PSMF ¶10.[6] Finch told Jepson not to mention the plan because "it was still in the planning stages." PSMF ¶11. Finch approached James Seigen in the spring of 1998 and told him he could buy Guertin's building "really cheap". PSMF ¶12. Finch made this statement a few weeks *before* Guertin received the letter from Bangor Savings Bank announcing its intent to foreclose on the mortgage. PSMF ¶12.

Guertin filed a complaint in which he alleged that Eastport violated his due process rights and Finch conspired to violate his rights. The Defendants then filed the present Motion to Dismiss.

### Arguments

---

[5] After reviewing the Plaintiff's Statement of Material Facts, the supporting affidavits, and the Complaint, it is clear that Guertin believes the Defendants are attempting to purchase real estate, including his, in order to develop the area in accordance with Community Development Block grant program.

[6] The Defendants dispute PSMF ¶10-12, however for the purpose of this motion the Defendants admit the statements.

4

The Defendants contend that Guertin cannot proceed with his procedural due process claim because he failed to proceed with the abatement process for the tax years in question. The Defendants further contend that Guertin cannot prevail on the charge of conspiracy because the although Guertin claims that the lien for the 1998 tax year is invalid, the Defendants only pursued foreclosure on the 1999 and 2000 tax liens, and therefore took no affirmative action to deprive Guertin of his property in violation of any due process requirements.

Guertin points out that the due process claim is substantive in nature and therefore the fact that he did not proceed with the abatement proceedings does not preclude this action. Further, although the tax liens the Defendants foreclosed on were facially valid Guertin claims the Defendants acted in bad faith with regard to the first tax lien, which the Bangor Savings Bank foreclosed on, and the subsequent tax liens. Guertin claims he has alleged sufficient behavior to support both the due process claim and the conspiracy claim.[7]

The Defendants claim that Guertin has not alleged sufficient conduct to proceed with a substantive due process claim and therefore, since conspiracy is not an independent tort, cannot proceed with either claim.

**Discussion**

Summary judgment is no longer an extreme remedy. Curtis v. Porter, 2001 ME 158, ¶7, 784 A.2d 18. A party is entitled to summary judgment when there are no genuine issues of material fact, and the party is "entitled to judgment as a matter of law."

---

[7] Guertin also claims the Court can invoke the doctrine of equitable estoppel because the Town has acted in bad faith. However, the Court may never invoke the doctrine of equitable estoppel against a town in the exercise of its taxation responsibilities. Town of Freeport v. Ring, 1998 ME 48, ¶13, 727 A.2d 901. Further, the elements are lacking in the present case. Id.

M.R. Civ. P. 56 (c); In Re Estate of Davis, 2001 ME 106, ¶7, 775 A.2d 1127, 1129. A fact is material when it has the potential to affect the outcome of the suit. Kenny v. Dep't of Human Services, 1999 ME 158, ¶3, 740 A.2d 560, 562 (citation omitted). An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of the truth at trial. Id. (citation omitted).

In order to survive a Defendant's motion for summary judgment the Plaintiff must establish a prima facie case for each element of the cause action the defendant challenges. Mastriano v. Blyer, 2001 ME 134, ¶11, 779 A.2d 951. The Court should grant a defendant's motion for summary judgment if the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law. Curtis, 2001 ME 158, ¶7. If the parties dispute material facts they must resolve the matter through fact-finding, even if the nonmoving party's likelihood of success is small. Id. Courts consider, along with facts the parties establish, any reasonable inferences that a fact-finder could draw from the facts. Id at ¶9 Courts accord the nonmoving party "the full benefit of all favorable inferences that may be drawn". Id.

A necessary predicate for either a procedural or substantive due process claim is a cognizable property interest. Carroll F. Look Construction Co., Inc. v. Town Of Beals, 2002 ME 128, ¶11, 802 A.2d 994. The parties do not dispute that Guertin has a cognizable property interest.

**Procedural Due Process**

Guertin, in his response to the Defendants' Motion for Summary Judgment, references procedural due process arguments, however he later bases his claim on substantive due process violations. In so far as Guertin wishes to move forward with a

6

procedural due process claim, the administrative abatement process is the proper vehicle to "correct any illegality, error or irregularity in assessment." Capodilupo v. Town of Bristol, 1999 ME 96, ¶4, 730 A.2d 1257 (citing 36 M.R.S.A. §841.) The appropriate procedures are in place to protect Guertin's property interests. Therefore, to the extent Guertin alleges a violation of procedural due process, the Court grants the Defendants' Motion for Summary Judgment as to Count One of the Plaintiff's Complaint.

**Substantive Due Process**

Concepts of due process require (1) that the object of the Town's exercise of its police powers be to provide for the public welfare, (2) that the legislative means employed must be appropriate to achieve the ends sought, and (3) that the manner of exercising the power must not be unduly arbitrary or capricious. Nugent v. Town of Camden, 1998 ME 92, ¶19, 710 A.2d 245. Guertin bears the burden of proof on this claim. Id. Guertin does not challenge the Defendants' authority to impose taxes but claims that the manner in which the Defendants exercised their taxing power in the present matter was unduly arbitrary or capricious. The Court in Capodilupo noted that because the Plaintiffs did not allege that the entire tax assessment was void due to an unlawful tax or invalid taxing authority, rather they claimed the assessment process was so flawed as to be illegal, the gravamen of their complaint was still excessive tax assessments. Therefore, the abatement process provided the proper means for the Plaintiffs to pursue a remedy. However the present case is distinguishable, the Plaintiffs in Capodilupo were seeking a declaratory judgment, had not previously litigated the matter and did not allege a violation of substantive due process.

In order to be arbitrary and capricious, governmental action must be unreasonable, have no rational factual basis, or lack substantial support in the evidence. Frustaci v. City of South Portland, 2002 WL 747910 (Me. Super. 2002), (citing Central Maine Power Co. v. Waterville Urban Renewal Authority, 281 A.2d 233, 242 (Me.1971)). [8] A substantive due process claim requires proof that the state action was "in and of itself... egregiously unacceptable, outrageous and conscious shocking." Id (citing Cruz-Erazo v. Rivera-Montantez, 212 F.3d 617, 622 (1st Cir. 2000).

Guertin has alleged that, after receiving notice of the Law Court's decision ruling that the assessed taxes for the tax years 1994-1995 and 1995-1996 were not based upon "just value" pursuant to the Maine Constitution, the Defendants continued to assess his property at a rate not based on just value. In fact, the Defendants used the same assessed value that the Law Court had negated for the years prior. Guertin references documents that seem to contradict the towns tax assessment of his property. Documents signed by Finch state that the property in the area is losing value and the owners are not adding equity. If this is true, it is hard to imaging how the Defendants can justify continuing to assess taxes at a rate the Law Court deemed inappropriate. If the property is losing value should not the assessed value decrease? Guertin has also alleged that the Defendants had

---

[8] Had Guertin appealed from the Town's denial of his abatement application, the WCC would have begun their review with the presumption that the assessor's valuation of the property is valid. Yusem v. Town of Raymond, 2001 ME 61, ¶8, 769 A.2d 865. Guertin would have needed to present credible evidence that the assessor's valuation was "manifestly wrong." Id. In doing so, Guertin would have had to demonstrate that the judgment of the assessor was irrational or so unreasonable in light of the circumstances that the property was substantially overvalued and an injustice resulted. Id. It is clear that based on the prior court decision and internal town documents that Guertin could have overcome this burden. The Commission would have then engaged in an "independent determination of fair market value... based on a consideration of all relevant evidence of just value." Id quoting Quoddy Realty Corp., 1998 ME 14, ¶5. Although Guertin did not proceed with the abatement procedure, the Court notes the standards as evidence of the arbitrary and capricious nature of the Town's assessment.

8

a plan for his property and evidences that they have bought surrounding property and applied for various development grants. Considering the Defendants' own descriptions of the property and the recent Law Court decision, the tax assessments have no rational fact basis and appear unreasonable.

As a result of the Defendants actions Guertin has sold his commercial fishing vessel to pay the Bank's accelerated note, which came about because of a facially invalid tax lien, and lost a fishing license worth $50,000.00. Guertin has alleged, via admitted facts and reasonable inferences, sufficient egregious conduct to establish a violation of substantive due process and therefore established a prima facie case for Count One. The Town has failed to expressly disavow the reasons Guertin states for their actions and fails to offer reasons that are legitimate to support their assessment of Guertin's property.

**Conspiracy**

The Defendants contend that because they only pursued foreclosure of the Plaintiff's property based on valid tax liens that they issued in 1999 and 2000, Guertin fails to allege that Finch committed any independent act designed to deprive Guertin of his substantive due process rights. Guertin only needs to establish a prima facie case in order to defeat the Defendants' Motion for Summary Judgment. Mastriano, 2001 ME 134, ¶11.

To state a claim for civil conspiracy the plaintiff must allege that the defendants conspired to commit a tort and that a member of the conspiracy took action in furtherance of the conspiracy. Speedway Holdings Associates, LP v. Bahre, 2001 WL 1710952, *1 (Me. Super.). citing Cohen v. Bowdoin, 288 A.2d 106, 112 (Me.1972); RESTATEMENT (SECOND) OF TORTS 876 (1977). Civil conspiracy is not an independent tort. Id

(citing <u>Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell</u>, 1998 ME 70, ¶8, 708 A.2d 283, 286.)

Guertin has alleged that the first invalid tax lien the Town issued, which the Bank foreclosed on, Finch's statements to various residents of the Town, Finch's knowledge of his financial situation with Bangor Savings Bank, the Defendants insistence on an assessed value unrelated to "just value", and their plan for development were actions designed to deprive him of his property.

The Court has already found that Guertin can proceed with his substantive due process claim and therefore, with that as the underlying claim, Guertin has alleged a prima facie case for conspiracy.

THE DOCKET ENTRY IS:

> The City of Eastport's and George Finch's Motion for Summary Judgment is denied.

The clerk is ordered to incorporate this decision into the docket by reference.

_____
Justice, Superior Court

DATED:     December 11, 2002.

FILED

DEC 13 2002

MARILYN E. BRALEY Clerk

| Date Filed 8/21/01 | Washington County | Docket No. Cv-01-020 |
| --- | --- | --- |

Action  Civil Rights

| James H. Guertin | vs. | City of Eastport and George Finch |
| --- | --- | --- |

| Plaintiff's Attorney | Defendant's Attorney |
| --- | --- |
| Sandra H. Collier, Esq.  Bar # 1828<br>P.O. Box 1391<br>Ellsworth, Maine 04605 | Daniel Lacasse, Esq. Bar # 2433<br>PO Drawer 414<br>Calais, ME 04619-0414<br><br>Bruce Mallonee, Esq.  Bar # 2286<br>Luke Rossignol, Esq.  Bar # 8913<br>PO Box 1401<br>Bangor, ME 04402-1401 |

Date of
Entry