STATE OF MAINE                          SUPERIOR COURT
HANCOCK, ss                             Docket No. CV 95-144


C.P., A FLORIDA PARTNERSHIP
        Plaintiff


        V


JOHN HURD, II, and JANICE L. HURD


                        DECISION

    This case was presented to the Court as a jury waived

hearing on July 8 and 9, 2008, for trial on Plaintiff's

amended complaint.


                        Background

    A two-count complaint was filed in November of 1995,

by Plaintiff.  Count I sought a declaratory judgment of the

Plaintiff's rights in and over the Hurd property from

Plaintiff's lot to the Shore Road, alleging an easement by

implication.  Count II sought a declaration of those rights

by a prescriptive easement.


    Subsequently the parties represented to the Court in

1998 that they had reached a settlement of the underlying


                            1

litigation. A dispute arose as to the terms of the settlement resulting in the Plaintiff filing a Motion to Compel Settlement in 1999. Following a hearing, this Court denied the Plaintiff's Motion to Enforce Settlement by its Order dated August 1, 2007.

Plaintiff subsequently filed a Motion to Amend its Complaint. In its December 17, 2007, decision granting Plaintiff's Motion to Amend its complaint[1], this Court made it clear to the parties that the only issue before the Court at the hearing on the Motion to Enforce was the existence of and potential for enforcement of a 'settlement agreement' which was reportedly entered into in 1998. By its August 1, 2007, Order, the Court found a settlement agreement did not exist. The amended complaint is now before the Court for decision.

The Amended Complaint alleged as theories of recovery (1) easement by implication/quasi easement; (2) prescriptive easement; (3) easement of necessity; (4)

---

[1] Defendant in its recent memo argued that the statute of limitations barred the contract claim as alleged in the amended complaint now before the Court. The Court notes that the issue of the statute defense and whether it was raised timely is academic since the amended complaint relates back to the date of the original filing under Rule 15(c) M.R.Civ.P., *John W. Goodwin, Inc. v. Edward Fox*, 642 A.2d 1339 (Me. 1994)

2

breach of contract; (5) equitable estoppel (it also references that a declaratory judgment is being requested). At the trial and without objection, Plaintiff dismissed counts (1), easement by implication and (2) prescriptive easement. Following the trial and at the request of the parties, the Court and counsel participated in a 'view' of the properties in question.

## Facts

This dispute goes back prior to the 1990's. Plaintiff's predecessor in title had access to his property, which abutted that of the Hurds, by what was know as the Shore Road. For reasons not relevant to this suit, the Shore Road was discontinued as a public way that had the effect of leaving Plaintiff's lot without road access, but with water access. By this action Plaintiff is seeking to confirm that he has access to his lot over the Gray Road (an extension of what had been the Shore Road) which runs over the Hurd property. The Hurds deny that such a right exists.

This litigation crystallized when in the 1990's the Defendants (Hurds), owning adjoining property to Plaintiff advised the Plaintiff's predecessor in title (Adams) that

3

they would no longer permit them to go over the Hurd property to gain access to a public road.[2]

The Plaintiff takes the position that in the late 1990's the Hurds agreed with the Adams to permit the Plaintiffs to travel over the Hurd's property in order to gain access to the Plaintiff's lot from the public road that adjoined the Hurd property. From the Adams's perspective, the parties had an agreement to locate the right of way or road that would cross the Hurd's property and provide the Adams with access to their property. Further, the Plaintiff takes the position that this agreement was either an express or implied contract and that Plaintiff materially altered their position to their detriment in reliance on the Hurds express or implied representations.

The Defendants take the position that they agreed 'in concept' with a road going across their property to give access to Plaintiff's, but they disagree as to where that road would be located, the financial other consideration for the agreement and an agreement was never reached.

---

[2] The parties refer to the Plaintiff's property as the Adams lot and for ease of reference the Court will do so as well, appreciating that the real plaintiff is C. P. Florida Partnership, the successor in title to the Adams.

Defendants take the position that the road agreed to was to be across a narrow area on or near the northerly line of their property and not the road that they discussed with surveyor nor the road which, in the last few years, has been constructed on their property running from their easterly line to the Hurd's garage.

## Discussion

Plaintiff puts forth three theories in support of its claim to road access across the Hurd's property to their now landlocked property.

## Easement by Necessity

The parties agree that the burden is on the landowner claiming easement by necessity to demonstrate (1) the conveyance of a lot out of a larger, divided parcel; (2) the lack "for all practical purposes" of access to the conveyed lot; and (3) the availability of relief in the form of an easement across the retained land of the conveyor. *Amodeo v. Francis* 681 A.2d 462, 465 (Me. 1996); Morrell v Rice, 622 A.2d 1156, 1158-60 (Me. 1993).

This Court is persuaded and finds that for "all practical purposes", Plaintiff does not have water access

to their property. This finding is based on the testimony of civil engineer Parker, who had dock design experience. That testimony (1) demonstrated the nature of the shore on Frenchman Bay and the character of the water which adjoins Plaintiff's property where a dock would have to be built; (2) the uncertain likelihood of getting permits to build a dock/wharf; (3) the $300,000 to $400,000 cost of building a dock should one be permitted by State and Federal Agencies, to which is added the cost of design; (4) the Court's view of the property and shoreline in question. See *Morrell v. Rice*, supra at 1160, n.6. Accordingly, on the facts presented, the landlocked status of Plaintiff's property is not relieved because it is bordered on one side by Frenchman Bay.

The pivotal and dispositive factual issue from the Court's perspective is the inability of the Plaintiff to demonstrate that Plaintiff's lot was conveyed from a larger lot (which included the Hurd's lot) and that the conveyed lot (Plaintiff's) was landlocked by grantor's/conveyor's surrounding land and cannot be accessed from a road. (*Amodeo v. Francis*, surpa at 465).

6

Passing by the significance of the fact that Plaintiff's lot became landlocked in 1993 when by Declaratory Judgment it was determined that Plaintiff was legally denied access by the Shore Road coming from the North of Plaintiff's property and across property now of Amundsen[3], Plaintiff's lot was created in 1890 by the conveyance from Susan M. Gerrish to Edmund H. Talbot[4]. At the time of that conveyance, the 'greater lot' of Susan Gerrish was separate and distinct from the 'greater lot' of her sister Adelaide Gerrish, from whose lot the Hurd lot was created through subsequent conveyance in the chain of ownership of Adelaide Gerrish (See Plaintiff's Exhibit 32, admitted by agreement). Plaintiff is claiming an easement by necessity over the Hurd property which property initially came from a larger piece that has its origin in a conveyance from Adelaide M. Gerrish to William and Edward Parker in 1893[5]. If the land from Susan Gerrish to Mr. Talbot was landlocked (or declared without presumed northerly access in 1993), that landlocked lot did not come from the conveyance traceable back to the Adelaide Gerrish

---

[3] See Amended Judgment and Findings of Fact, Dec. 14, 1993 (Mead, J.) Powers et al. v Inhabitants of the Town of Winter Harbor, et al., Hancock Docket No. CV-88-105
[4] Hancock County Registry of Deeds Book 259, Page 134, dated October 25, 1890, [Defendant's Exhibit 223]
[5] Hancock County Registry of Deeds Book 277, Page 333 dated December 27, 1893 [Defendant's Exhibit 218]

7

— Hurd lot. At best, assuming the landlocked status, the law would imply an easement to Susan Gerrish land (Talbot deed through to Plaintiff's deed). The Hurd deed is not in that chain and Plaintiff can not carry the burden of proof on the element which requires that they show that the grantor's conveyance created an easement by necessity over land that was not the grantor's at the time the landlocked lot was conveyed. The deeds submitted as evidence and the chain of title (Plaintiff's Exhibit 32 admitted by Agreement) do not, as a matter of law, support proof of a necessary element to demonstrate 'easement by necessity', as claimed by the Plaintiff.

This Court finds and concludes that the Plaintiff has failed in his burden of proof to demonstrate an easement by necessity which would legally entitle Plaintiff, or their sucessors in title, to cross the Hurd property.

Breach of Contract

Evidence of Negotiations

In its earlier decision on the enforceability of a settlement agreement, the Court took no position on whether the parties had entered into an agreement/contract subsequent to the period alleged in the alleged settlement

8

agreement. The Motion to Enforce Settlement Agreement was dated April 22, 1999[6], and it was alleged that the settlement was reached in July of 1998.

Counsel for Plaintiff has expressed concern over the reference by Defendant's counsel to 'negotiations' that have taken place between Plaintiff and Defendant off and on over the last 10 years as manifested by conversations and correspondence, much of which if not all of which is in evidence either as part of the presentation on May 24 and June 27, 2007 when the hearing took place on the Motion to Enforce, or at the more recent hearings of July of 2008.

This Court is very conscious of the purpose and limitations of Rule 408, M.R.Evid. The reality is that one of Plaintiff's claims is to establish a contract, either express or implied, between Plaintiff and Defendants. Of necessity, to accomplish this, both sides needed to refer to discussions, negotiations and conduct of the parties, not for the purpose of compromising the negotiation process and the confidentiality associated with it (See recently enacted Rule 515, M.R.Evid.), but for the purpose of establishing — or not — the elements of an agreement that

---

[6] See Order Denying Motion to Enforce Settlement Agreement dated August 1, 2007.

9

evolved after July of 1998. After all, that is the basis of one of Plaintiff's three claims. Not alone does the Court find that reference to the prior negotiations was not improper, the Court finds that it was required for the parties to demonstrate their respective positions.

## Contract — Discussion

A contract is legally enforceable if it is founded upon a meeting of the minds, consideration, and mutuality of obligations. Estate of John McPhee, 2006 ME 38, 904 A.2d 401. Plaintiff's counsel appropriately describes Defendant as a "moving target" in terms of getting an agreement at any point along the time line in this case. While the Court would agree with that characterization, the other side of the coin is that Plaintiff was slow to the switch in terms of firming up an agreement, which is to say the target was not moving that quickly!

For the Court to find a contract, either express or implied, it must be definite enough to allow the Court to determine its meaning and fix legal liabilities of the parties. *Forrest Assoc. v. Passamaquoddy Tribe* 2000 ME 195, ¶9, 760 A.2d 1041, 1044. These latter points are all questions of fact.

While the Court did not find as a fact that a contract existed between the parties in the form of a settlement agreement prior to July of 1998, the Court finds as a fact that the events subsequent to that created a meeting of the minds on where the right of way to the Adams property across the Hurd property would be located. Specifically the effort of the Plaintiff's agent, Stevenson White Sheppard, as reflected in the May 24 and June 21, 2007 testimony, demonstrated a meeting of the minds in the summer of 1999 on where the right of way would be and a manifestation on the part of the Hurds to grant that right of way. The fact that Mr. Sheppard walked the Hurd property with the Hurds and marked the right of way area, which area the Hurds specifically agreed would be the area of the right of way in November of 1999 and again in the summer of 2000 when he prepared plans and drawings, demonstrates a meeting of the minds of Plaintiff and Defendant that a right of way would be granted and where it would be located. The agreement being that the Hurds would transfer to the Adams the right to cross the Hurd property by way of the defined right of way. See Sheppard testimony 5/24/07 at pgs. 71, 77-81, 88; 6/21/07 at pg. 7, Plaintiffs Exhibits 15 and 19.

The common sense of the discussions with Mr. Sheppard and the Hurds is to be contrasted by the lack of clarity and definiteness, by counsel for both sides, of the terms of the agreement with regard to such things as consideration, payment of expenses and related matters which would fix the liabilities of the parties (See *Forrest v Passamaquoddy*, sura. Counsel seemed either unwilling or unable to finalize with contractual definiteness, the terms of this agreement.

Reference to correspondence submitted as Defendant's Exhibit 1 at the 2007 hearings, makes this point. Starting with the 3/3/99 letter from Guinta to Devoe. That letter makes a specific offer/proposal with six different terms or parts. Mr. Devoe's response appears to have been his April 23, 1999, letter to Mr. Guinta alerting him that a Motion to Enforce the Settlement would be filed — nothing more in response to the 3/3/99 letter. Mr. Guinta's letter to Mr. Devoe of July 25, 2000 suggests that the parties were continuing to talk about a "proposed" granting of a right of way but there continued to be a lack of definiteness as to what those discussions were even as Mr. Sheppard was presumably progressing with his efforts with the Hurds with

12

some specificity. Mr. Devoe's letter of Feb. 5, 2001, to Mr. Guinta suggests an acknowledged lack of timely communication and that Devoe's surveyor was going forward with work but a lack of definiteness as to what that work was or what the terms or conditions were even as of that date concerning any agreement. Mr. Guinta's March 26, 2002, letter to Mr. Devoe's law firm suggests a disagreement as to whether the right of way would be a 12' traveled way and a 16' easement or 15' and 20' as suggested by Mr. Devoe. There was also an issue as to whether the contractor doing the work would be approved by Mrs. Hurd. Mr. Devoe responds to Mr. Guinta on 1/30/03 and Mr. Guinta by reply of 2/10/03 he asks for a draft copy of the release. Nothing seemed to happen and Mr. Guinta again writes Mr. Devoe on 12/8/03 encouraging resolution. Nothing having happened, on 9/7/04, Mr. Guinta writes Mr. Devoe advising him that the Hurds have swapped some land with a neighbor and sends an outline for a different easement then "proposed by your surveyor" which is sent to Mr. Devoe indicating it will be 16' wide and a traveled way of 12'. The Hurds indicate that given the passage of time the original $7500 for attorney fees will not now cover expenses and the Hurds want to revisit this. On 9/20/04 Mr. Devoe responds agreeing to the new location of the

13

right of way but not agreeing to pay for the alternative construction of the Hurd driveway nor any additional attorney's fees (suggesting that both sides seemingly had yet to finalize the terms of an agreement as far as they were each concerned). They also would not agree to Mrs. Hurd selecting the contractor to do the work. On 11/1/04, Mr. Guinta writes Mr. Devoe suggesting 2 alternative proposals with terms and conditions to go forward with the easement. On 1/27/05 Devoe's office responds seeking clarification but no agreement. Further correspondence between counsel follows without a definite agreement. [See Defendants Ex. 1 from the 2007 hearing which is a compendium of correspondence].

I have taken the time to summarize this correspondence to highlight the absence of a meeting of the minds, with the single exception of Mr. Sheppard and Mrs. Hurd walking her property in November of 1999 and setting out where a right of way 'could' be. To infer, in the context of all the facts, that a CONTRACT, a legally enforceable agreement had been entered into either in November of 1999 or in July of 2000 when Mr. Sheppard drew his plans from the discussions and work he did with the Hurds, forces one to ignore what happened over the next six or more years.

There is NOTHING that happened that permits the inference by this Court that there was an agreement on material issues. Both parties clearly did not operate as if there was an agreement. From 1999 to 2007, no right of way was constructed to permit access to the Adams property. During that time frame, no right of way agreement was ever drafted to which the parties agreed. Consideration/money was discussed as being paid to the Hurds for attorney fees at a time when the lack of agreement resulted in more than 5 years of additional legal services which were neither anticipated nor compensated in a way that the payment reflected an agreed consideration for specific actions as opposed to unanticipated actions to be taken over some uncertain period in the future.

This Court is not prepared to so isolate and strain those isolated facts to conclude that the parties had formed a contract either express or implied with regard to a right of way over the Hurd property during the period from July of 1998 through the summer of 2007. On this count the Court finds in favor of the Defendant, due to a failure of proof on the part of the Plaintiff.

Equitable Estoppel

The elements of equitable estoppel require the Plaintiff to prove that Defendant made false representations or assertions upon which the Plaintiff relied to his detriment. *Town of Freeport v. Ring*, 1999 ME 48, ¶14, 727 A.2d 901, 906. While Plaintiff can make out a case of detrimental reliance on representations made by the Hurds to Mr. Sheppard in 1999 and 2000 with regard to the location of a right of way to the Adams property, the underlying conduct on which the estoppel is based must sound in bad faith representations or misrepresentations. See *Town of Freeport v. Ring*, supra.

Before considering the application of this equitable remedy, the Court finds that this claim is barred by the doctrine of unclean hands of the Plaintiff in this matter when the conduct of the Plaintiff is viewed as reflected in the facts and good faith, or lack of the same. See *Hamm v. Hamm* 584 A.2d 59, 61 (Me. 1990). This is particularly manifest in the delay reflected in the correspondence between counsel when Mr. Sheppard was making significant progress in negotiating resolution of this dispute with the Hurds.

The Court refuses to act on this theory and therefore finds for the Defendant.

## Declaratory Judgment

At the core of this litigation is the request of the Plaintiff that this Court declare the rights and liabilities of the parties with respect to Plaintiff's right to cross the land of Defendants Hurd to gain access to Plaintiff's landlocked lot. The Court, based on all of the evidence submitted in this matter, finds that the Plaintiffs have no right, either legal or equitable, to cross Defendant Hurd's land to gain access to public roads from Plaintiff's lot which is the subject of this litigation.

Defendant makes reference to the financial cost of this litigation to Defendants as being an element of damages that this Court should consider. The Court notes that Plaintiff, as the moving party in this litigation, bears the brunt of the delays and lack of movement toward resolution. That short-coming is not alone the fault of the Plaintiff. Likewise, the Plaintiff has incurred significant expenses in efforts made to move this matter

forward.    The lack of movement toward resolution also rests with the Defendant, in part.    In terms of the payment of legal fees, the rule in Maine is that each party pays their own legal fees.  *Foremost Insurance Company v. Robert Levesque*, 2007 ME 96, ¶5, 926 A2d 1185.    While there are exceptions to that general rule, in this instance the Court sees no basis to deviate from that general rule.    Each party will pay its own legal expense.

At the direction of the Court, this Order shall be incorporated into the docket by reference.    Rule 79(a) M.R.Civ.P.

Dated:  November 17, 2008

_____

Kevin M. Cuddy

Justice, Superior Court

RECEIVED & FILED

NOV 17 2008

HANCOCK COUNTY
COURTS